EXHIBIT B

3508041

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

SEP 19 2012

## ARTICLES OF INCORPORATION
### OF
### LOMA LINDA – INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION

I

The name of the corporation is LOMA LINDA – INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION.

II

A.  This corporation is a Religious Corporation and is not organized for the private gain of any person.   It is organized under the Nonprofit Religious Corporation Law exclusively for religious purposes.

B.    The specific purpose of this Corporation is to continue the teaching and healing ministry of Jesus Christ through:

1. Supporting Graduate Medical and Dental Education with necessary educational, financial and human resources;

2. Maintaining an ethical, professional and education environment in which curricular requirements and applicable requirements for scholarly activity and the general competencies can be met;

3. Providing leadership, organizational structure and resources to allow substantial compliance with Institutional Requirements of the Accreditation Council on Graduate Medical Education and to enable the programs which are accredited through the Accreditation Council for Graduate Medical Education to achieve substantial compliance with program requirements;

4. Serving the healthcare needs of underserved patient populations (including under-represented minorities and other high risk populations) both in the present through healthcare services and in the future as the medical and dental residents continue to serve these populations after graduating;

5. Assessing the quality of Graduate Medical Education programs, the performance of residents and using results of outcome assessment for program improvement as essential components of this commitment;

6. Providing excellent, Christ-centered Graduate Medical Education to allow its resident physicians to develop both their professional and personal lives; and

7. Other purposes permitted by law and consistent with the corporate mission.

EXHIBIT B

EXHIBIT B

III

The name and address of the corporation's initial agent for service of process is:

Kent A. Hansen
601 S. Main Street
Corona, CA 92882

IV

A. This corporation is organized and operated exclusively for religious purposes within the meaning of Internal Revenue Code § 501(c)(3).

B.   No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation and this corporation shall not participate in or intervene in (including publishing or distributing statements) any political campaign on behalf of any candidate for public office.

V

The property of this corporation is irrevocably dedicated to charitable purposes and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer, or member thereof or to the benefit of any private person.   Upon the dissolution or winding up of this corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for religious purposes and which has established its tax exempt status under Internal Revenue Code section 501(c)(3).

Date: 9 / 18 / 2012

Daniel Giang, Sole Incorporator

SophiaHamilton\LL-IECFHCE.art[2]

Page 2 of 2

EXHIBIT B

EXHIBIT B



I hereby certify that the foregoing
transcript of ____2____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

SEP 29 2012

Date: _____

DEBRA BOWEN, Secretary of State

EXHIBIT B

# EXHIBIT B

## BYLAWS
## OF
## LOMA LINDA—INLAND EMPIRE CONSORTIUM
## FOR HEALTHCARE EDUCATION

*a California Nonprofit Religious Corporation*

## ARTICLE I. NAME

The name of this corporation is LOMA LINDA—INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION (hereinafter "LLIECHE").

## ARTICLE II. PRINCIPAL OFFICE

The principal office for the transaction of the activities and affairs of the corporation (principal office) is located at 11175 Campus Street, Loma Linda, CA 92354, in San Bernardino County, California. The Board of Directors ("Board") may change the principal office from one location to another. The Board may at any time establish branch or subordinate offices at any place or places where the corporation is qualified to conduct its activities.

## ARTICLE III. PURPOSES, RELATIONSHIPS, RESERVED POWERS AND LIMITATIONS

**Section 1. <u>General Purpose.</u>**

    1.1.  LLIECHE is a religious corporation organized pursuant to the Non-Profit Religious Corporation Law of the State of California to continue the healing and teaching ministry of Jesus Christ.

    1.2.  This corporation is not organized for the private gain of any person. It is organized under the Nonprofit Religious Corporation Law of the State of California for charitable purposes. This corporation is organized exclusively for charitable purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986 or the corresponding provision of any future United States internal revenue law. Notwithstanding any other provision of these Bylaws, this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the purposes of this corporation, and the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from federal income tax under section 501(c) (3) of the Internal Revenue Code of 1986 or the corresponding provision of any future United States internal revenue law, or (b) by a corporation, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code of 1986 or the corresponding provision of any future United States internal revenue law.

# EXHIBIT B

EXHIBIT B

**Section 2. <u>Specific Purposes.</u>** LLIECHE's purpose, in alignment with the specific purposes of Loma Linda University Health ("LLUH") and Social Action Community Health System ("SACHS"), is to continue the teaching and healing ministry of Jesus Christ through:

2.1. Supporting Graduate Medical and Dental Education with necessary education, financial and human resources;

2.2 Maintaining an ethical, professional and educational environment in which curricular requirements and applicable requirements for scholarly activity and the general competencies can be met;

2.3 Providing leadership, organizational structure and resources to allow substantial compliance with Institutional Requirements of the Accreditation Council on Graduate Medical Education and to enable the programs which are accredited through the Accreditatation Council for Graduate Medical Education to achieve substantial compliance with program requirements;

2.4 Serving the healthcare needs of underserved patient populations (including under-represented minorities and other high risk populations) both in the present through healthcare services and in the future as the medical and dental residents continue to serve these populations after graduating.

2.5 Assessing the quality of Graduate Medical Education programs, the performance of residents and using results of outcome assessment for program improvement as essential components of this commitment; and

2.6 Providing excellent, Christ-centered Graduate Medical Education to allow its resident physicians to develop both their professional and personal lives.

**Section 3. <u>Reserved Powers</u>**

3.1. <u>Powers Reserved to LLUH, SACHS, LLUMC and LLU Boards of Trustees Requiring a Super-Majority Vote</u>. The powers reserved by LLUH, SACHS, LLUMC and LLU as Members, which may only be exercised by the LLUH, SACHS, LLUMC and LLU Boards upon the affirmative vote of two-thirds of the Trustees/Directors present and voting at any regular or special meeting of the respective Boards at which a quorum is present are to:

3.1.1. Approve or ratify all changes to the Articles of Incorporation and Bylaws of LLIECHE.

3.1.2. Remove from office the entire Board of LLIECHE with or without cause.

3.1.3. Approve any significant change in the corporate purposes of LLIECHE.

3.2. <u>Powers Reserved to LLUH, SACHS, LLUMC and LLU Boards</u>. The powers reserved by LLUH, SACHS, LLUMC and LLU as Members, which shall only be exercised by the LLUH, SACHS, LLUMC and LLU Boards upon the affirmative vote of a majority of the Members present and voting at any regular or special meeting of the Board at which a quorum is present, are to:

3.2.1. Appoint the Board for LLIECHE as set forth in Article V. Section 1 below.

3.2.2. Require LLIECHE to have a policy for borrowing funds that is congruent with the LLUH Board-approved policy on borrowing.

3.2.3. Approve any merger, consolidation, dissolution or sale of LLIECHE.

3.2.4. Approve any exceptions to the policy for the borrowing of funds by LLIECHE.

3.2.5. Approve the strategic plan of LLIECHE.

EXHIBIT B                                    B-5

EXHIBIT B

3.2.6. Approve major construction projects of LLIECHE.

3.2.7. Approve corporations subsidiary or affiliated to LLIECHE including accountable care organizations.

3.2.8. Accept the annual audited financial statements of LLIECHE.

3.2.9. Approve the annual operating and capital budgets of LLIECHE.

3.2.10. Require LLIECHE to establish contracting guidelines.

3.2.11. Approve the business development plans of LLIECHE.

3.2.12. Approve recommendations from LLIECHE and its subsidiaries for new institutional alliances, joint ventures and similar arrangements outside the ordinary course of business.

3.2.13. Require LLIECHE to have a compliance program.

**Section 4: <u>Limitations.</u>**

4.1. Nothing in these Bylaws is intended, nor shall be construed, to diminish the authority of the LLIECHE Board of Directors over its own strategic, operational and management issues as required by California law, accrediting bodies, and/or financing documents.

4.2. A Member of the corporation wishing to reimburse another Member for contracted professional or administrative services shall contract and make payment only with the Member providing services and not with any employees or departments of a Member.

4.3. No substantial part of the activities of this corporation shall consist of lobbying or propaganda, or otherwise attempting to influence legislation, except as provided in section 501(h) of the Internal Revenue Code of 1986, and this corporation shall not participate in or intervene in (including publishing or distributing statements) any political campaign on behalf of any candidate for public office except as provided in section 501(h) of the Internal Revenue Code of 1986.

4.4. All corporate property is irrevocably dedicated to the purposes set forth in Section 1 above. No part of the net earnings of this corporation shall inure to the benefit of any of its directors, trustees, officers, private shareholders or membership, or to individuals.

## ARTICLE IV. MEMBERSHIP OF THE CORPORATION

**Section 1.   <u>Corporate Membership</u>**. The Corporate Membership (the "Membership") of LLIECHE pursuant to Section 9310 of the California Nonprofit Religious Corporation Law shall be LLUH, SACHS, LLUMC and LLU, acting by and through their Boards of Trustees/Directors. The Membership of the Corporate Members may not be assigned, transferred or encumbered in any manner whatsoever, either voluntarily or involuntarily.  Unless otherwise specified herein, all questions shall be determined by a majority of the Member Boards of Trustees (See Article III, Section 4).

**Section 2.   <u>Membership Meeting</u>**.

2.3. <u>Action by Written Consent of the Members</u>.  Any action required or permitted to be taken by the Members under law or these Bylaws may be taken without a meeting if

EXHIBIT B

all the Members individually or collectively consent in writing to the action. Written consents must be filed with the minutes of the proceedings of the Member. Action by written consent has the same force and effect as a unanimous vote of the Members.

2.4. <u>Matters that Must be Specified in the Notice for a Meeting or Action of the Members</u>. The following matters must be specified in the Notice for a Members' Meeting or Action if they are to be considered at the meeting or by action by written consent.

    2.4.1. Adopting, amending or repealing the Bylaws.

    2.4.2. Removing Directors without cause.

    2.4.3. Disposal of corporate assets.

    2.4.4. Amending of Articles of Incorporation

    2.4.5. Adopting or amending a merger agreement.

    2.4.6. The voluntary windup and dissolution of the Corporation.

2.5. <u>Unanimity and Meet and Confer</u>. The approval of matters within the reserved powers require the unanimous consent of the Members. If the Members cannot unanimously agree on an action required of them, they shall meet and confer in person or by representatives appointed for that purpose with the purpose of reaching agreement before submitting the action for another vote of the Members. If the Members cannot reach agreement after their conference and another vote, the action shall be deemed denied.

2.6 <u>Notice of Meetings</u>.

    2.6.1. <u>Notice</u>. Notices of the time, place, and agenda of each regular and special meeting of the Members not fixed by an express provision of the Bylaws shall be given to each member of the Boards of the Members not less than twenty-four (24) hours before the date of the meeting if given personally or by telephone or electronic mail, and if given by first-class mail, not less than ten (10) days before the date of the meeting.

    2.6.2. <u>Waiver of Notice</u>. The transactions of any meeting of the Members, however called and noticed and wherever held, shall be as valid as though enacted at a meeting duly held after regular call and notice if a quorum of the Members' Boards are present, and if either before or after the meeting, each member of the Board not present signs a written waiver of notice or a consent to hold the meeting or approval of the minutes of the meeting. All the waivers and consents or approvals shall be filed with the corporate records or be made a part of the minutes of the meeting.

**Section 3.  Liability of Member**. There shall be no membership fees, dues, or assessments. The Member of LLIECHE shall not be liable to LLIECHE creditors for any indebtedness or liability. Any or all creditors of LLIECHE shall look only to the assets of LLIECHE for payment.

## ARTICLE V.  BOARD OF DIRECTORS

**Section 1.  Qualification of Directors.**

EXHIBIT B

1.1. <u>Overall Qualifications.</u> All Directors of the corporation must be committed to the furtherance of health care delivery and the advancement of medical education in the communities served by the corporation, and must be willing to devote the necessary time and energy for self-education, corporate functions and other actions necessary to fulfill this commitment. Directors have a fiduciary duty to the corporation, and shall make all decisions in a manner that is in the best interests of the corporation and the community. Directors shall not advocate or act in the best interest of any person or group unless it also serves the best interest of the corporation.

**Section 2. <u>Number of Directors.</u>** The Board shall be composed of at least four (4) and no more than nine (9) persons. The LLIECHE Board shall be appointed by the Members at the first regular meeting of the Members following the Members' quinquennial membership meeting and shall include at least the following:

2.1. <u>LLUH – One (1) Director</u>.  The President of LLUH shall ordinarily serve as a Director.

2.2. <u>SACHS – One (1) Director</u>.  The President of SACHS shall ordinarily serve as a Director.

2.3. <u>LLUMC – One (1) Director</u>.  The Chief Executive Officer of LLUMC shall ordinarily serve as a Director.

2.4 <u>LLU – One (1) Director</u>.  The Dean of the LLU School of Medicine shall ordinarily serve as a Director.

**Section 3. <u>Officers of the Board.</u>**

3.1. The President of LLUH shall ordinarily be the Chair of the LLIECHE Board and shall:

- Preside at meetings of the LLIECHE Board.
- Cause to be called regular and special meetings of the Board in accordance with these Bylaws.
- See that all actions of the Members and all actions and policies of the LLIECHE Board are carried into effect through the CEO.
- Invite additional persons as advisors to attend meetings of the LLIECHE Board and its committees.
- Stay informed on the work of the various committees and faculties, and on activities of LLIECHE.
- Perform such other duties as the LLIECHE Board may delegate.

3.2. The Vice Chair of the Board of Directors ordinarily shall be the President of SACHS. The Vice Chair shall preside in the absence of the Chair at the meetings of the Board.

**Section 4. <u>Powers of Directors.</u>**

Subject to the limitation of the Articles of Incorporation, other sections of the Bylaws including those relating to reserve powers of the Members, and of applicable State law, all corporate powers of LLIECHE shall be exercised by or under the authority of the Board and all the business and affairs of LLIECHE shall be controlled by the Board.  Without limiting the general powers, the Board shall have the power:

4.1. To establish the philosophies, goals, objectives and policies of LLIECHE

EXHIBIT B

EXHIBIT B

4.2. To appoint and remove the LLIECHE Corporate officers; prescribe such powers and duties for them as are consistent with law, the Articles of Incorporation and the Bylaws; fix their compensation and require from them security for faithful service (Security may include, but is not necessarily limited to, bonding for officers and employees, execution of conflict of interest statements, etc.)

4.3. To provide financial oversight to the corporation in accordance with the powers reserved to the Corporate Members (Article III, Section 3):
- To approve the annual operating and capital budgets
- To receive and approve the annual audited report
- To approve financial policies
- To approve borrowing of money and incurring of indebtedness for the purposes of LLIECHE, and for those purposes to cause to be executed and delivered, in the corporate name, promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations or other evidences of debt and security
- To authorize the disbursement of funds by the designated officer
- To authorize the acquisition and disposition of real property

4.4. To formulate, revise and maintain appropriate policies, in harmony with the mission, values and objectives of LLIECHE and LLUH, and as required by law or proposed by accrediting agencies. Further, to periodically evaluate the effectiveness of these policies and make changes to maintain harmony. Further, to approve the policies and procedures of LLIECHE.

4.5. To appoint committees of the Board, as may be authorized in these Bylaws or as the Board deems necessary and to define the responsibilities of such committees. Further, to invite additional persons or counselors to attend meetings of the Board and or its committees.

4.6. To ensure appropriate fulfillment of the fiduciary responsibilities of the Directors:
- Adopting conflict of interest guidelines applicable to members of the Board and corporate officers.
- Providing appropriate resources to assist individual Directors in understanding and fulfilling their responsibilities as Directors.
- To establish a method and policy for evaluating the Board of Directors' own performance.

4.7. Adopt and use a corporate seal, and alter the form of the seal.

4.8. To exercise such additional powers as may be provided by law.

**Section 5: Meetings.**

5.1. Type of Meetings.

    5.1.1. Organization Meetings. Within sixty (60) days following the quinquennial meeting of the Members, the Board shall hold a regular meeting for the purpose of organization and the transaction of business. No other notice of such organization meetings need be given.

    5.1.2. Regular Meetings. The Board shall normally meet three (3) times each calendar year.

    5.1.3. Special Meetings. Special meetings of the LLIECHE Board for any purpose or purposes may be called at any time by the Chair of the LLIECHE Board and notices sent by his/her authorization.

EXHIBIT B

EXHIBIT B

5.1.4. <u>Meetings by Telephone</u>. Directors shall be deemed present at any meeting if a conference telephone or similar communication equipment is arranged by means of which all persons participating in the meeting can communicate with each other.

5.1.5. <u>Action Without Meeting</u>. Any action required or permitted to be taken by the Board of Directors may be taken without a meeting, if all members of the Board of Directors individually or collectively consent in writing to that action. Any action by written consent will have the same force and effect as a unanimous vote of the Board of Directors. All written consents will be filed with the minutes of the proceedings of the Board of Directors.

"Written" or "in writing" includes facsimile, telegraphic and other electronic communication as authorized by the Corporations Code, including electronic mail and other electronic transmission by the Corporation that satisfies the requirements of Corporations Code section 20.

All the Board members must consent to the use of electronic communications prior to voting by e-mail. Such consent must be preceded by a clear statement indicating (1) the recipient's right to have the record provided in non-electronic form, (2) whether the consent applies only to that transmission, to specified categories of communications, or to all communications from the Corporation, and (3) the procedures the recipient must use to withdraw consent.

5.2. <u>Notice of Meetings</u>.

5.2.1. <u>Notice</u>. Notices of the time and place of each meeting of the LLIECHE Board not fixed by an express provision of the Bylaws shall be given to each Director not less than twenty-four (24) hours before the date of the meeting if given personally, by telecommunication, or by electronic mail; or if given by first class mail or equivalent, not less than ten (10) days before the date of the meeting, addressed to the Director at the Director's latest address on the records of LLIECHE, or if such address is not shown on records, at LLIECHE's principal place of business.

5.2.2. <u>Waiver of Notice</u>. The transaction of any meeting of the Board, however called and noticed and wherever held, shall be as valid as though the meeting had been held after call and notice if a quorum is present and if, either before or after the meetings, each of the Directors not present signed a written waiver or notice of consent to hold the meeting or approval of the minutes of the meeting. All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

5.3. <u>Quorum</u>. Three (3) Directors of the Board, which shall include the Chair or Vice Chair, and shall constitute a quorum for the transaction of business. If less than a quorum is present at a regular meeting, any resulting action shall be subject to the ratification of the Board at the next meeting in which a quorum is present.

5.4. <u>Voting of the Boar</u>d. Each Director shall have one vote on any question. No person may vote or act by proxy. Unless otherwise specified herein, all questions shall be determined by a majority of those Directors present and voting.

EXHIBIT B

# EXHIBIT B

5.5. <u>Place of Meeting</u>.  Regular meetings of the Board shall be held at any place within or without the State of California designated from time to time by resolution of the Board.  In the absence of this designation, regular meetings shall be held at the principal office of LLIECHE in San Bernardino County, California.  Special meetings of the Board may be held either at a place designated or at the principal office.

## Section 6.  **Vacancies on the Board and Director Replacement.**

6.1. A Member whose representative Director is or becomes ineligible or can no longer serve as a Director shall have power to fill the vacancy of the Director on the Board at or between the annual meetings of the Members.  A successor Director so elected shall serve until the next scheduled regular meeting of the Members.  Should the Member not fill each Board position, such position shall be deemed vacant for purposes of this section.

6.2. A Director may be replaced upon the occurrence of any of the following:

6.2.1. A Director's written resignation addressed to the Secretary of the Corporation with such resignation to become effective upon the Secretary's receipt of such notice unless a date of resignation is otherwise specified in the notice.

6.2.2. The death of a Director.

6.2.3. A Director shall automatically be disqualified from office for failure to: (a) maintain the qualifications required for a Director specified in Sections 1 and 2 of this Article V, or (b) comply with any other provision of these Bylaws.

6.2.4. A Director may be replaced without cause by his or her appointing Member.

**Section 7.  Standard of Conduct.**  Pursuant to Section 9241 of the California Nonprofit Religious Corporation Law, a Director shall perform the duties of a Director including duties as a member of any committee of the Board upon which the Director may serve, in good faith, in a manner such Director believes to be in the best interest of LLIECHE and with such care including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.  In performing the duties of a Director, a Director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, prepared or presented by:

7.1. One or more officers or employees of LLUH, SACHS, LLUMC, LLU and LLIECHE whom the Director believes to be reliable and competent in the matters presented;

7.2. Counsel, independent accountants or other persons as to matters which the Director believes to be within such person's professional or expert competence;

7.3. A committee of the Board upon which the Director does not serve, as to matters within its authority, which committee the Director believes to merit confidence.

**Section 8.  Self-Dealing Transactions.**  Except as provided in Section 9243 of the California Nonprofit Religious Corporation Law, the Corporation shall not be party to a transaction in which one or more of its directors has a material financial interest.

**Section 9.  Interlocking Directors.**  No contract or other transaction between LLIECHE and any domestic or foreign corporation, firm or association of which one or more of the Directors are

LLIECHE Bylaws Final 05-13-15                    8

EXHIBIT B

directors or trustees is either void or voidable because such Director or Directors are present at the meeting of the Board or a committee thereof which authorizes, approves or ratifies the contract or transaction, if:

9.1. The material facts as to the transaction and as to such Director's other directorship or trusteeship are fully disclosed or known to the Board or committee and the Board or committee authorizes, approves or ratifies the contract or transaction in good faith by a vote sufficient without counting the vote of the common Director or Directors; or

9.2. As to contracts or transactions not approved as provided in Section 8 of this Article V, the contract or transaction is just and reasonable as to LLIECHE, taking into account its religious purposes, or is in furtherance of its religious purposes at the time it is authorized, approved or ratified.

This section does not apply to transactions covered by Section 8 of this Article V relating to a Director's personal "material financial interest".

**Section 10.  Compensation.** No member of the LLIECHE Board shall receive any form of compensation, either directly or indirectly, based upon or related in any manner to that member's service on the Board.  Each member of the LLIECHE Board shall be obligated to verify compliance with this section in the Conflict of Interest Statement.

**Section 11.  Conflict of Interest.** The Board shall adopt and apply a conflict of interest policy and procedure designed to insure that Directors, officers and management undertake their respective responsibilities with an uncompromised duty of loyalty and fidelity consistent with their fiduciary relationship to LLIECHE and that such persons make full disclosure of interests which might result in or have the appearance of a conflict of interest in satisfying their fiduciary obligations. LLIECHE (through Directors, officers or management) shall refrain from considering or consummating any transaction involving any conflict of interest until all relevant and pertinent facts regarding the transaction and the conflict of interest have been disclosed, considered, avoided and/or resolved.  A conflict of interest is considered to exist in those instances where a relationship or interest that an individual has or had might influence his/her actions on a matter  which is or might be contrary to the best interests of LLIECHE.


### ARTICLE VI. COMMITTEES

**Section 1. Appointment and Responsibilities.**  Except as otherwise provided by these Bylaws, the LLIECHE Board may, by resolution, appoint standing or special committees comprised of at least two (2) Directors, the members of which shall serve at the pleasure of the Board.  Any such committee, when a quorum is present and to the extent provided in the resolution of the Board or in the Bylaws, shall have all authority of the Board, except with respect to:

1.1. The approval of any action which also requires approval of the Members;

1.2. The filling of vacancies on the Board or in any committee which has the authority of the Board;

1.3. The amendment or repeal of the Bylaws or the adoption of the new Bylaws;

EXHIBIT B

    1.4.  The amendment or repeal of any resolution of the Board, which by its express terms is not so amendable or repealable; and

    1.5.  The appointment of committees of the Board.

**Section 3.** <u>**Finance Committee**</u>. The Board may establish a Finance Committee. The Finance Committee shall consist of at least two (2) Directors appointed by the Board.. The EVP for Finance, Administration/CFO of LLUH shall be an ex officio member of the Finance Committee and shall ordinarily serve as its Chair. This committee shall serve as a strategic budgetary and finance planning committee with authority to make recommendations to the Board in the development and implementation of financial policies and decisions for LLIECHE and its subsidiaries.

**Section 4.** <u>**Audit Committee.**</u> The LLUH Board Audit Committee shall be the Audit Committee for LLIECHE. The Audit Committee shall have general responsibility for surveillance or internal controls and accounting and audit activities of LLIECHE.

**Section 5.** <u>**Bylaws Review Committee.**</u>  The Board may establish a "Bylaws Review Committee". (See Article XVI, Section 2).

**Section 6.** <u>**Graduate Medical Education Committee.**</u> The Board shall establish a "Graduate Medical Education Committee".

**Section 7.** <u>**Meetings and Actions**</u>. Meetings and actions of committees of the LLIECHE Board shall be governed by, held, and taken in accordance with, the provisions of these Bylaws concerning meetings and other Board actions except that the time for regular meetings of such committees and calling of special meetings of such committees may be determined either by Board resolution, or if there is none, by resolution of the committee. Minutes of each meeting of any committee of the Board shall be kept and filed with the corporate records. The Board may adopt rules for the governance of any committee that are consistent with these Bylaws, or in the absence of rules adopted by the Board, the committee may adopt such rules.

## ARTICLE VII. OFFICERS

**Section 1.** <u>**Officers of the Corporation**</u>. The officers of the corporation shall be the:
    A.  Chief Executive Officer
    B.  Chief Operating Officer
    C.  Chief Financial Officer
    D.  Secretary
The corporation may also have, at the Board's discretion, one or more Vice Presidents, one or more Assistant Secretaries, and one or more Assistant Financial Officers. Any number of offices may be held by the same person, except that neither the Secretary nor the Chief Financial Officer nor the Chief Executive Officer may serve concurrently as the Chair of the Board.

**Section 2.** <u>**Appointment and Removal.**</u>
    2.1.  The Board shall appoint all officers of LLIECHE to serve at the pleasure of the

EXHIBIT B

Board.

2.2. The appointment or reappointment of the Officers by the Board will occur immediately following the quinquennial meeting of the Members.

2.3. Without regard to any rights of an officer, under any contract of employment, an officer, may be removed by the Board at any time with or without cause being necessary or stated.

**Section 3.   Resignation of Officers.** Any officer may resign at any time by giving written notice to the corporation.  The resignation shall take effect as of the date the notice is received or at any later time specified in the notice and, unless otherwise specified in the notice, the resignation need not be accepted to be effective.  Any resignation shall be without prejudice to the rights, if any, of the corporation under any contract to which the officer is a party.

**Section 4. Chief Executive Officer.**  The Chief Executive Officer (CEO) ordinarily shall be the SACHS Chief Medical Officer.  The authorities and duties of the CEO, subject to Board control, are to:

- Provide overall leadership and direction to LLIECHE.
- Harmonize the mission, vision and values of LLIECHE with those of SACHS and LLUH.
- Coordinate the strategic planning of LLIECHE for health ministry, education, research, spiritual life and wholeness, diversity, and outreach consistent with the strategic planning of LLUH.
- Represent LLIECHE to the public.
- Foster positive external relations of LLIECHE with SACHS, LLUH, LLU, LLUMC, the LLUFMG, contracting entities, the local community, and governmental entities.
- Fulfill Governance responsibilities by being an ex officio member of all standing committees; directing and obtaining LLIECHE compliance with the functions and reserved powers of the Members (as set forth in Article III, Section 3 of these Bylaws); and having such other powers and duties usually vested in such an officer.

**Section 5.   Chief Operating Officer.** The Chief Operating Officer (COO) of the corporation ordinarily shall be the LLUMC Executive Director for Graduate Medical Education, and shall be appointed by the CEO subject to the approval of the Board.  The responsibilities of the COO, subject to Board control and under the direction of the CEO shall be to:

- Oversee the general administration and operations of LLIECHE and subsidiaries, if any, in line with the Board-approved policies, in compliance with applicable laws and regulations and subject to the authorities and duties of the CEO.
- Carry out all policies and procedures established by the LLIECHE Board.
- Develop and submit to the Board for approval, a plan of organization of personnel and others concerned with the operation of LLIECHE and its subsidiaries, if any. Identify and recommend to the Board potential candidates, for other officer positions, who have the necessary professional qualifications and competencies, who will support the mission of LLUH, SACHS, LLUMC and LLU.
- Implement a strategic plan with specific objectives and actions and present updates to the Board.
- Select, employ, supervise, and discharge employees, and develop and maintain

EXHIBIT B

EXHIBIT B

personnel policies and practices for LLIECHE, in compliance with the relevant laws, accreditation requirements and the policies established by the Board.

- Implement and maintain, in conjunction with the CEO, systematic and effective mechanisms of communications within and between the Board, the administration, the departments/services and the faculty physicians.
- Execute contracts as authorized by the Board, and in accordance with contracting policies of LLIECHE.
- In conjunction with the CEO and CFO, prepare and implement an annual operating, capital and cash flow budget for LLIECHE in accordance with the strategic plan and present this to the Board for approval according to policy.
- Maintain physical properties in a good state of repair and ensure their effective utilization.  Oversee the planning of new facilities in collaboration with the CEO and CFO.
- Present to the Board or its committees periodic reports reflecting operations, mission endeavors and other special reports as may be requested.
- Support clinical research and the application of basic research to the care of patients within policies utilizing the research infrastructure of LLUH.
- Facilitate the personal wholeness of the staff and the provision of whole person care for the patients and their families.
- Nurture the success of a diverse staff and create an inclusive environment for the diverse population that is served.
- Participate with the CEO in fostering external relations.
- Participate in local outreach to better the community and respond, in collaboration with the CEO as appropriate, to requests from international locations.
- Coordinate the fulfillment and maintenance of accreditation requirements for LLIECHE and its member organizations.
- Perform such other duties as the CEO may delegate or the Board may authorize.
- Have such other powers and duties as are usually vested in such an officer.

**Section 6.  Chief Financial Officer**.  The Chief Financial Officer who shall be responsible to the CEO, shall ordinarily also be the Sr. Vice President for Finance of LLUMC.  He or she shall:

- Establish and direct the systems of oversight and control essential to maintain LLIECHE's fiscal integrity.
- Assist the CEO in the preparation and administration of the budget for LLIECHE.
- Under the direction of the Audit Committee, facilitate, with the Internal Auditor, the annual financial audit process for LLIECHE.
- Provide oversight of accounting methods and procedures.
- Perform such other duties as the CEO or COO may delegate or the LLIECHE Board may authorize.
- Administer the budget and the day-to-day fiscal operations of LLIECHE and be responsible to the COO for such administration, subject to the oversight and direction of the CFO.
- Receive, keep safely, account for and disburse all funds.
- Manage, maintain and secure the physical plant, facilities and grounds.
- Prepare appropriate reports and analyses.

EXHIBIT B

- Perform such other duties as the COO may delegate.
- Ordinarily serve as the CFO of subsidiary organizations whose sole corporate member is LLIECHE.

**Section 7.** <u>Secretary</u>. The Secretary shall keep a record of the proceedings of the Corporation and shall perform all duties usually incident to the office of Secretary as set forth in the organization and policies approved by the Board and shall perform such other duties as the President may delegate or the Board may authorize. The Secretary shall ordinarily be the Corporate Secretary of LLUH.

**Section 8.** <u>Vice Presidents</u>. There may be Vice Presidents with varying responsibilities appointed by the Board, upon the recommendation of the CEO, with duties as specified by the CEO.

**Section 9.** <u>Officer Conduct.</u> Officers of LLIECHE are prohibited from making or authorizing payments or engaging in activities that would violate the tax-exempt status of LLIECHE. The Internal Auditor shall annually audit the payroll records and expense records of each officer to determine if any such violation has occurred and shall report its findings to the Audit Committee of the LLIECHE Board with a recommendation for appropriate corrective action, if necessary. The General Counsel, Internal Auditor and Corporate Compliance Officer shall provide annual education to the LLIECHE officers on the requirements for their conduct in compliance with the requirements for the tax-exempt status of LLIECHE.

## ARTICLE VIII.  SUBSIDIARY CORPORATIONS

From time to time LLIECHE may establish subsidiary corporations (see Article III, Section 4.2.7). The authority of the subsidiary corporation Board will be specified in the Articles of Incorporation and Bylaws by the LLIECHE Board at the time of the subsidiary's incorporation. Any subsequent changes to the subsidiary corporation Articles and Bylaws will require approval of the LLIECHE Board and the Members. LLIECHE may also, subject to the reserve powers of the Members, participate in one or more accountable care organizations.

## ARTICLE IX.  QUALITY OF PROFESSIONAL SERVICES

The Board of Directors delegates to the officers of LLIECHE the responsibility of maintaining quality and availability of professional services, including ensuring continuous programmatic accreditation as applicable.

## ARTICLE X.  ADDITIONAL POWERS AND LEGAL INSTRUMENTS

**Section 1.** <u>Additional Powers.</u>  In addition to the powers and duties hereinabove specifically granted to the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, and Secretary, each, upon the authorization of LLIECHE Board shall have the power on behalf of LLIECHE to execute all deeds, conveyances, mortgages, contracts, promissory notes, and other

instruments of similar character and import; provided, however, that such documents shall also be signed by the Secretary. In addition, the LLIECHE Board may delegate authority to other officers or subordinate officers to execute on behalf of LLIECHE, either alone or in conjunction with others, such instruments as it may designate.

No contracts or agreements executed by any officer of LLIECHE, which are not within the authority specifically granted to him or her by the LLIECHE Board, shall be valid without previous authorization of or subsequent ratification by the LLIECHE Board. Election or appointment to any office shall not constitute a contract of employment.

**Section 2. Legal Documents.** The Board shall adopt a policy which shall specify in detail the officers who are authorized for execution of various legal documents. The CEO or his/her designee shall maintain a master file of all legal instruments of LLIECHE, including minutes, deeds, mortgages, contracts and insurance policies. Duplicate files may be maintained by the CEO and General Counsel. Legal document files shall at all times be available for review of any individual director of LLIECHE at all reasonable business hours, providing that originals of such legal documents be retained permanently in the official files of LLIECHE and not removed from the premises of the corporate offices.

**Section 3. Securities.** The Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, Secretary or such other officers as the Board may select for that purpose are authorized to vote, represent and exercise on behalf of LLIECHE all rights incident to any and all voting securities of any other Corporation or Corporations standing in the name of LLIECHE. The authority granted by these Bylaws to officers to vote or represent LLIECHE arising from any voting securities held by LLIECHE and any other Corporation or Corporations may be exercised by the officers in person or by any person authorized to do so by proxy or power of attorney duly executed by the officers.

## ARTICLE XI. INDEMNIFICATION

**Section 1. Advancement of Expenses.** The CEO of the corporation may, in his or her sole discretion, authorize the corporation to advance to a corporate agent any amount equal to or less than the expenses incurred by the agent in defending himself or herself against any threatened or pending action or proceeding brought against the agent in connection with the agent's actions or omissions on behalf of the corporation. Such advances shall be memorialized in a written agreement between the agent and the corporation. The Board must approve any advance made to the CEO under this section, prior to such advance being paid to the CEO.

**Section 2. Indemnification Upon Successful Defense.** If an agent of the corporation is successful on the merits in defense of any proceeding, claim or other contested matter brought against the agent in connection with the agent's actions or omissions in relation to the corporation, the corporation shall indemnify the agent against his or her actual and reasonable expenses incurred in defending himself or herself against such proceeding or claim.

**Section 3. Indemnification Upon Unsuccessful Defense.**

# EXHIBIT B

3.1 <u>Mandatory Indemnification.</u> To the maximum extent permitted by law, the corporation shall indemnify each of its present and former (i) Directors, (ii) Officers, (iii) persons who are or were regularly invited for six (6) consecutive months or more to attend and participate at Board meetings or Board committee meetings, and (iv) persons identified in a duly approved Board resolution as qualifying for this mandatory indemnification (each of whom is an "indemnitee") against expenses (collectively, "Payments") actually and reasonably incurred by such indemnitee in connection with defending himself or herself against an action or proceeding.  An employee of the corporation may be an indemnitee if he/she meets one or more of the definitions of indemnitee set forth above.  Notwithstanding the above, mandatory indemnification shall be given to a potential indemnitee only if all of the following apply:

    3.1.1.  The potential indemnitee was not a Director, Officer or other person who was removed from one or more of their positions with this corporation;

    3.1.2.  The action or proceeding against the indemnitee is based on or relates to an action or inaction taken by the indemnitee on behalf of the corporation;

    3.1.3.  The action or proceeding against the indemnitee is based on an action or inaction that was within the scope of the indemnitee's role or relationship with the corporation;

    3.1.4.  The Board of Directors (excluding vacancies and Directors who have a conflict   of interest) has made all findings required by California Nonprofit Religious Corporation Law (the indemnitee shall not be eligible to receive this mandatory   indemnification if such findings are not made by the Board); and

    3.1.5.  The potential indemnitee has not procured for himself/herself any illegal profit, remuneration or advantage, as determined by the Board in its sole discretion. If a person does not qualify for this mandatory indemnification, such person might still receive discretionary indemnification as outlined below.

3.2 <u>Discretionary Indemnification.</u> To the maximum extent permitted by law, the Board of Directors may, in its sole discretion, by a majority vote (excluding vacancies and Directors with a conflict of interest), indemnify an agent (including former Directors who were removed by the Board of Directors, employees and/or agents identified by the Board as acting on behalf of the corporation and not entitled to mandatory indemnification) (each of which is a "recipient") against any or all of the expenses, judgments, fines, settlements and/or other amounts actually and reasonably incurred by such recipient in connection with an action or proceeding against the recipient, subject to the following:

    3.2.1.  The action or proceeding against the recipient must be based on or relate to an action or inaction taken by the recipient on behalf of the corporation and within the scope of the recipient's role or relationship with the corporation.

    3.2.2.  An employee of the corporation may be a recipient if he/she meets one or more of the definitions of recipient set forth above.

    3.2.3.  The Board of Directors (excluding vacancies and Directors who have a conflict   of interest) must have made all findings required by California

# EXHIBIT B

EXHIBIT B

Nonprofit Religious Corporation Law (the recipient shall not be eligible to receive this discretionary indemnification if such findings are not made).

3.2.4.  Indemnification is not available if the recipient is found to have procured for himself/herself illegal profit, remuneration or advantage.

For purposes of this Article, an "agent" shall have the meaning established in California Nonprofit Corporation Law applicable to this corporation.


## ARTICLE XII.  AUDITOR

The books of LLIECHE shall be audited annually by an independent firm of certified public accountants as the Board may direct.


## ARTICLE XIII. INSURANCE

The corporation shall have the right to purchase and maintain insurance to the fullest extent permitted by law on behalf of its officers, directors, employees, and other agents, against any liability asserted against or incurred by any officer, director, employee, or agent in such capacity or arising out of the officer's, director's, employee's, or agent's status as such.


## ARTICLE XIV. CONSTRUCTION AND DEFINITIONS

Unless the context requires otherwise, the general provisions, rules of construction and definitions in the California Nonprofit Corporation Law shall govern the construction of these bylaws.  Without limiting the generality of the preceding sentence, the masculine gender includes the feminine and neuter, the singular includes the plural, the plural includes the singular, and the term "person" includes both a legal entity and a natural person.


## ARTICLE XV.  DISSOLUTION

On the winding up and dissolution of this corporation, after paying or adequately providing for the debts, obligations, and liabilities of the corporation, the remaining assets of this corporation shall be distributed to an organization (or organizations) organized and operated exclusively for charitable purposes selected by the Board, which has established its tax-exempt status under section 501(c)(3) of the internal Revenue Code of 1986 (or the corresponding provision of any future United States internal revenue law). The recipient organization shall be LLUH, if LLUH meets the qualification described in this paragraph.


## ARTICLE XVI. AMENDMENT TO ARTICLES AND BYLAWS

**Section 1:**  **Amendment of Articles and Bylaws**.  The Articles of Incorporation and these Bylaws may be amended by an affirmative vote of the Members, when the proposed amendment

EXHIBIT B

does not conflict with federal or state laws.  When it is proposed to change the Bylaws at any meetings of the Members, notice shall be given to that effect in the call for the meeting. All amendments and approvals shall be filed with the corporate records or be made a part of the minutes of the meeting.

**Section 2:** **Bylaws Review Committee**.  The Board may establish a "Bylaws Review Committee."  (See Article VI, Section 5.) The purpose of this Committee shall be to review, evaluate and make recommendations for revisions to the LLIECHE Board on a periodic basis. This review process shall take place at a minimum of once every five (5) years.  The Board shall consider and act upon such recommendations from the Bylaws Review Committee before forwarding this to the Members for consideration and enactment.

**Section 3. Inspection.**  These Bylaws, and all amendments thereto, shall be recorded in a minute book which shall be kept by the Secretary of LLIECHE at the principal office of LLIECHE and may be inspected at any time during regular office hours by any Director or officer of LLIECHE or its members.

EXHIBIT B

EXHIBIT B

### CERTIFICATION OF
### LOMA LINDA—INLAND EMPIRE CONSORTIUM
### FOR HEALTHCARE EDUCATION

I, Brian S. Bull, Secretary of Loma Linda—Inland Empire Consortium for Healthcare Education, hereby certify that the attached bylaws of Loma Linda—Inland Empire Consortium for Healthcare Education, a California nonprofit religious corporation, were approved by the membership of same corporation at a duly held meeting on May 19, 2015 and that the same is the entire document and is true and correct.

**IN WITNESS WHEREOF,** I execute this certificate effective as of the _6 July_ , 2015.

_____
Brian S. Bull, Corporate Secretary

EXHIBIT B