EXHIBIT O

## OFFICIAL REPORT OF PROCEEDINGS

### BEFORE THE

### NATIONAL LABOR RELATIONS BOARD

### REGION 31

In the Matter of:

Loma Linda Inland Empire     Case No.   31-RC-312064
Consortium for Healthcare
Education d/b/a Loma Linda
University Health Education
Consortium,

                    Employer,

and

Union of American Physicians
and Dentists,

                    Petitioner.


            _____


            _____


Place: Los Angeles, California (Via Zoom Videoconference)

Dates: March 13, 2023

Pages: 1 through 137

Volume: 1

                OFFICIAL REPORTERS
                  eScribers, LLC
            E-Reporting and E-Transcription
        7227 North 16th Street, Suite 207
                Phoenix, AZ 85020
                (602) 263-0885



EXHIBIT O

EXHIBIT O

1

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 31**

| | |
|---|---|
| In the Matter of:<br><br>LOMA LINDA INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION D/B/A LOMA LINDA UNIVERSITY HEALTH EDUCATION CONSORTIUM,<br><br>                      Employer,<br>and<br><br>UNION OF AMERICAN PHYSICIANS AND DENTISTS,<br><br>                    Petitioner. | Case No.   31-RC-312064 |

The above-entitled matter came on for hearing via Zoom videoconference, pursuant to notice, before **KRISTEN SCOTT**, Hearing Officer, at the National Labor Relations Board, Region 31, 11500 West Olympic Boulevard, Suite 600, Los Angeles, California 90064, on **Monday, March 13, 2023, 12:01 p.m.**

EXHIBIT



EXHIBIT O

1              <u>A P P E A R A N C E S</u>

2      **On behalf of the Employer:**

3          **CHRISTIAN ROWLEY, ESQ.**
           **JENNIFER L. MORA, ESQ.**
4          SEYFARTH SHAW LLP
           560 Mission Street, Suite 3100
5          San Francisco, CA 94105
           Tel. (415)544-1001
6
           **JEFFREY A. BERMAN, ESQ.**
7          SEYFARTH SHAW LLP
           2029 Century Park East
8          Suite 3500
           Los Angeles, CA 90067-3021
9          Tel. (310)201-1541

10     **On behalf of the Petitioner:**

11         **DAVID A. ROSENFELD, ESQ.**
           **MICHAELA POSNER, ESQ.**
12         WEINBERG, ROGER & ROSENFELD
           1375 55th Street
13         Emeryville, CA 94608
           Tel. (510)715-4218
14         Tel. (510)671-4961

15

16

17

18

19

20

21

22

23

24

25



EXHIBIT O

1          MR. ROWLEY:  We can make it Number 8.

2          HEARING OFFICER SCOTT:  Okay, that would be fine.

3          Any objection --

4          MR. ROSENFELD:  Mr. Rowley -- no, but I don't see any

5     uploaded -- I don't see any of the exhibits uploaded on

6     SharePoint yet.

7          MR. ROWLEY:  She's in the process of doing it now.

8          MR. ROSENFELD:  Okay.  Okay, all right.  I just didn't

9     want to miss something.  So that would be Employer Exhibit 8.

10     **(Employer Exhibit Number 8 Received into Evidence)**

11          HEARING OFFICER SCOTT:  Okay.  Are there any other pre-

12     hearing motions made by any party that need to be addressed at

13     this time?

14          MR. ROWLEY:  Yeah, the Employer would move to adjourn the

15     proceedings.  As was discussed before we went on the record,

16     the Employer is a nonprofit religious corporation organized

17     under the laws of State of California.  It is part of the

18     Seventh-day Adventist Church, and its purpose is to educate

19     medical residents and fellows in the healing and teaching

20     ministry of Jesus Christ.  And it operates as part of the Loma

21     Linda University Health Services.  And so we are filing a

22     lawsuit in the United States District Court for the District of

23     Columbia, asking for the United States District Court, for a

24     declaratory judgment and injunctive relief premised on the

25     religious clauses found within the First Amendment, and the



EXHIBIT

O-4

EXHIBIT O

1    Religious Freedom Restoration Act.

2         Based on the precedent from the United States Supreme

3    Court case Leedom v. Kyne, 358 U.S. 184, (1958).  Under which

4    the District -- Federal District Court has the ability to

5    enjoin the Board when it acts outside of its jurisdiction,

6    which we believe it is here.  And so to allow the District

7    Court an opportunity to review that complaint and the

8    supporting papers and the Board and/or Union an opportunity to

9    participate in that decision, we would request that the Region

10   adjourn these proceedings pending that litigation.  And to be

11   clear, it hasn't been filed yet.  It will be filed today.

12        HEARING OFFICER SCOTT:  And Mr. Rosenfeld, for the

13   Petitioner, do you have a response?

14        MR. ROSENFELD:  Yeah.  We oppose the adjournment and

15   request rather that the Region expedite this hearing by going

16   from 9 until 9 every day, only a brief period for lunch, until

17   the hearing is concluded.  We ask that the Region expedite the

18   decision and direction of election so that these employees,

19   these residents and fellows who work very hard, who are

20   underpaid, don't receive the fair treatment that they deserve

21   for their very hard work, are able to have union

22   representation.

23        And I note in this regard that the Board has repeatedly

24   addressed the question of whether a religiously-affiliated

25   medical institution is subject to the jurisdiction of the



EXHIBIT O

1   Board, and has always found that a medical institution such as

2   this program is subject to the Board's jurisdiction.

3        I think the residents who are on this call and have heard

4   about this issue are quite surprised to think that their

5   medicine is influenced -- how they practice medicine is

6   influenced by the -- the church.  And they all respect the

7   right of members of church to practice their religion, but

8   they're here to learn to be physicians and to heal people in

9   ways that are related to medicine, and not to the practice of

10   religion.

11        So they're quite surprised to hear that this is the way

12   this education consortium works.  It's worth noting that many

13   of these residents spend much of their time away from Loma

14   Linda in public hospitals and private hospitals that are

15   nonreligiously affiliated.  They applied to the residency

16   program through a national matching program, and their

17   admission and participation does not depend on their religious

18   affiliation.

19        The hospitals where they heal patients and learn as

20   residents don't treat people or admit people differently based

21   on their religion.  And there's much other evidence in this

22   case that will demonstrate that this issue about First

23   Amendment expression and/or the Religious Freedom Restoration

24   Act, is -- isn't valid.  And I won't use stronger words because

25   it's not necessary.

EXHIBIT O

1      So we think the Region should, in order to make sure that

2   they have the right to union representation, to improve the

3   conditions for themselves, and the patients that they serve,

4   that this matter be expedited, and be continued without delay.

5   I have no objection if, when the case is filed, if Loma Linda

6   wants to put the lawsuit into the record in SharePoint, it can

7   go in the record.  But there should be no delay whatsoever.  We

8   should proceed as quickly as possible, so that these workers

9   can have -- these employees can have their Section 7 rights.

10  So we oppose any adjournment.

11      HEARING OFFICER SCOTT:  Thank you for that.

12      Mr. Rowley, any response?  Very briefly.

13      MR. ROWLEY:  Yeah.  Well, there's a lot of things that Mr.

14  Rosenfeld said with respect to statements that simply aren't

15  accurate and will be borne out by the evidence.  It's not

16  clue -- it's not true at all that the United States Supreme

17  Court or even the Federal District Courts have found that a

18  medical school owned and operated by a religion is not

19  protected by the First Amendment.

20      Quite to the contrary, the United States Court of Appeals

21  for the District of Columbia has previously chastised the Board

22  specifically for moving forward in situations where one of --

23  where the alleged Employer satisfied three requirements which

24  were easily and clearly satisfied in this case.  That it holds

25  itself out to the public as a religious institution, that it's

1    nonprofit, and that it's religiously affiliated, period.  That

2    should be end of the analysis under clear Board law.

3        In addition, the United States Supreme Court has ruled

4    extensively in Catholic Bishop and subsequent cases more

5    recently, for broad protection for religious organizations like

6    the Seventh-day Adventists.  This is a clear example for these,

7    and many other reasons, including under the Religious Freedom

8    Restoration Act, that the Board does not have jurisdiction

9    here, and in fact, we should not be required to have the Board

10   essentially look through the activities of a religious

11   organization, which it is protected from having that happen

12   under the First Amendment of the Religious Freedom Restoration

13   Act.

14       In terms of expediting it, obviously that's the Board's

15   decision.  I know that many of the witnesses here are

16   physicians who have physicians' schedules, who are making

17   exceptions to be able to come and speak here with the premise

18   and understanding this will be happening during normal hours.

19   And furthermore, again, that really defeats the purpose.  The

20   whole point of this is that the Board should not be proceeding

21   with this until it decides the religious sus -- issue.

22       The simple way to have handled this is for the Board to

23   have bifurcated the hearing, and to have allowed the hearing to

24   focus on the religious issues first, for a decision to have

25   been made on those issues; and then the parties could proceed



EXHIBIT O

1    depending on the outcome of that.  But the Board has refused to

2    do that, seemingly in direct contradiction of its own

3    precedent, and of the precedent of the United States Court of

4    Appeals for the District Circuit.  And so we would move -- for

5    the District of Columbia, so would be moving forward on that

6    hopefully.

7        MR. ROSENFELD:  I mean, I've forgiven Mr. Rowley's

8    statement -- and I want to be clear, because I've known him for

9    long, is it [Ro-ley] or [Row-ley], which do you prefer?

10       MR. ROWLEY:  You know, David, I really don't mind.  In

11   fact, on both coasts and in Boston, it's [Row-ley] and the West

12   Coast, so --

13       MR. ROSENFELD:  Okay, all right.  I just -- I like to be

14   careful about pronouncing people's names.

15       MR. ROWLEY:  Usually call me Christian.

16       MR. ROSENFELD:  All right.  So Mr. [Ro-ley] or Mr. Rowley.

17       MR. ROWLEY:  So call me Christian.

18       MR. ROSENFELD:  So I think -- our view is that what we

19   should do is stipulate to an election.  If the DC, District

20   Court, enjoins the Board's processes, we don't have an

21   election.  If it doesn't, we go for an election.  That's the

22   quickest way of doing this in a way that allows these residents

23   a chance to vote and preserves the Employer's argument.  Let

24   the District of Columbia District Court make a decision.  No

25   restraining order, we have an election; restraining order, we



EXHIBIT O

1   Q    Okay.  I have nothing further for right now.

2        HEARING OFFICER SCOTT:  Ms. Posner, do you have -- for the

3   Petitioner, do you have cross?

4        MS. POSNER:  I do.

5        HEARING OFFICER SCOTT:  Okay.  Are you ready, or do you

6   need five minutes?

7        MS. POSNER:  Oh, no.  I think I'm ready.

8        HEARING OFFICER SCOTT:  Okay.  I actually need five

9   minutes, because I'm going to be disconnected from the network.

10  So if we could just take five minutes and go off the record,

11  and when we come back very quickly, we'll begin cross.

12       So Robin, off the record.

13  (Off the record at 4:43 p.m.)

14       HEARING OFFICER SCOTT:  Okay.  All right.  Ms. Posner, you

15  may begin your cross.

16       MS. POSNER:  Thank you.

17                    **CROSS-EXAMINATION**

18  Q    BY MS. POSNER:  Thank you.  Good afternoon, Dr. Lee.  Now,

19  when you say that you've recruited -- you participate in

20  resident recruitment, it's correct that you only recruit

21  residents for the family medicine program, correct?

22  A    That's correct.

23  Q    And am I correct in understanding that your residency

24  program and all other LLUHEC residency programs are required to

25  comply with ACGME requirements, correct?



EXHIBIT O

```
1    A    Yes, that's correct.

2    Q    Okay, and for the benefit of the hearing officer, can you

3    just explain what ACGME is?

4    A    ACGME is the accrediting body that oversees graduate

5    medical education residency programs in the United States.

6    Q    Okay.  Thank you.

7         HEARING OFFICER SCOTT:  Do you know -- I'm sorry.  Can I

8    interject?

9         MS. POSNER:  No, go ahead.

10        HEARING OFFICER SCOTT:  Do you know the exact complete

11   name of that acronym?

12        THE WITNESS:  I believe it's the Accreditation Council for

13   Graduate Medical Education --

14        HEARING OFFICER SCOTT:  Thank you.

15        THE WITNESS:  -- but I am not 100 percent sure.

16        HEARING OFFICER SCOTT:  Thank you.

17        MS. POSNER:  Okay.  Madam Hearing Officer, did that

18   trigger another question for you?

19        HEARING OFFICER SCOTT:  Oh, no.  Thank you though.

20        MS. POSNER:  Okay.

21   Q    BY MS. POSNER:  Now, Dr. Lee, I want to make sure that

22   it -- you would agree with me that ACGME requirements prohibit

23   discrimination on the basis of religion, correct?

24        MR. BERMAN:  Objection.  Asking -- that's a legal

25   question, and the law speaks for itself.
```



EXHIBIT O

EXHIBIT O

```
 1          MS. POSNER:  Do you need me to respond, Madam Hearing

 2     Officer?

 3          HEARING OFFICER SCOTT:  Yes, please.

 4          MS. POSNER:  I'm not asking what the law says.  I'm asking

 5     what ACGME requirements are.  Dr. Lee testified that in -- that

 6     his program is required to comply with these residents (sic).

 7     He testified earlier about the role that a student's faith and

 8     whether they're a member the SDA, the role that plays.  And so

 9     I think it's entirely appropriate to ask about his

10     understanding of ACGME compliance.

11          HEARING OFFICER SCOTT:  Okay, yes it --

12          MR. BERMAN:  I object --

13          HEARING OFFICER SCOTT:  Go ahead.

14          MR. BERMAN:  I object that the question is also vague, is

15     what she means by discrimination.  What's -- lots of rules.

16          HEARING OFFICER SCOTT:  Okay.  Okay, thank you.  I'm going

17     to overrule the objection and allow Dr. Lee to provide us with

18     his understanding of what the ACGME requirements require.

19     A    Could you repeat the question, please?

20     Q    BY MS. POSNER:  Sure.  You would agree with me that ACGME

21     requirements prohibit discrimination on the basis of religion,

22     correct?

23          MR. BERMAN:  Objection.  Lack of foundation that he has

24     any knowledge of the topic.

25          MS. POSNER:  He are he already testified that he's
```



EXHIBIT

EXHIBIT O

1    familiar, that he needs to comply with the requirements.

2         MR. BERMAN:  If he --

3         HEARING OFFICER SCOTT:  Thank you both.  Okay.  The

4    objection is overruled.

5         Dr. Lee, to the extent that you do know, when you please

6    answer the question?

7    A    Sure.  There are guidelines in regards to the match

8    regarding what can be asked and what can be used in the

9    interview process.

10   Q    BY MS. POSNER:  My question was simpler than that.  My

11   question was whether or not you would agree with me that ACGME

12   prohibits discrimination on the basis of religion.  Do you

13   agree with that?

14        MR. BERMAN:  Objection.  The rules speak for themselves.

15   Objection.

16        HEARING OFFICER SCOTT:  I'm -- what's the objection?

17        MR. BERMAN:  The rules speak for themselves.

18        HEARING OFFICER SCOTT:  Okay.  Ms. Posner, could you maybe

19   clarify who or what the discrimination might be directed to?

20        MS. POSNER:  Sure.  I'd be happy to.

21   Q    BY MS. POSNER:  Dr. Lee, wouldn't you agree with me that

22   ACGME requirements for residency programs prohibit those

23   programs from discriminating against residents or applications

24   for residency programs on the basis of religion?

25        MR. BERMAN:  Objection, asked and answered.  It was the



EXHIBIT O

```
1    last question he was asked, and the last question he asked --

2    he was answered.

3         HEARING OFFICER SCOTT:  Okay.  Then -- okay.  The

4    objection is overruled.

5         Dr. Lee, would you please answer the question?

6    A    I don't know what ACGME's specific rules on religion used

7    in medicine is.  I -- I -- the ACGME -- yeah, I don't know.

8    Q    BY MS. POSNER:  So let me ask the question one more time,

9    because I'm not asking about use in the practice of medicine, I

10   am only asking about the process of the residency, whether it's

11   how the program treats its residents, or how applicants to

12   residency programs are treated.

13   A    Could you repeat your question then again?

14   Q    Yes.  Isn't it true that ACGME requirements prohibit

15   discriminating against -- prohibit programs, like LLUHEC's

16   programs, from discriminating against residents or

17   application -- applicants for residency programs on the basis

18   of religion?

19        MR. BERMAN:  Objection.  Same -- same grounds.  He's been

20   asked and answered that.  He's testified that he doesn't know

21   the rule.  And the rule speaks for itself.  If she's got a

22   rule, she could show it to him and ask if he's familiar with

23   the rule.  We think that there's no such rule.

24        HEARING OFFICER SCOTT:  Okay.  Thank you for that.

25        Mr. Lee, do you know the answer to that question?
```



EXHIBIT O

EXHIBIT O

```
1          THE WITNESS:  I do not.

2          HEARING OFFICER SCOTT:  Okay.  Okay.

3     Q    BY MS. POSNER:  So then isn't your understanding --

4          MS. POSNER:  I'll move on to the next question then.

5          HEARING OFFICER SCOTT:  Okay.  Thank you.

6     Q    BY MS. POSNER:  So then, Dr. Lee, is it your understanding

7     that you are in compliance with ACGME program requirements when

8     you give more preferable treatment to a resident because they

9     are a member of the SDA?

10         MR. BERMAN:  Objection.  Lack of relevance.  This has

11    nothing to do with this hearing at all.

12         HEARING OFFICER SCOTT:  Your response, Ms. Posner?

13         MS. POSNER:  That it actually is relevant because in --

14    too much of an emphasis is being placed on religion and indeed,

15    an emphasis that Loma Linda is -- or that LLUHEC, rather, is

16    prohibited from placing because they have chosen to participate

17    in ACGME programs.  And as a condition of that participation,

18    such a heavy emphasis on religion, including selecting

19    residents solely on that basis, is actually prohibited.

20         HEARING OFFICER SCOTT:  Okay.

21         MR. BERMAN:  Madam Hearing Officer, two points.  One is,

22    instead of talking about this supposed rule against

23    discrimination on account of religion, why doesn't she show him

24    the rule -- if there is that rule, and ask if he knows about

25    it?  That's the -- that's the only appropriate question.
```



EXHIBIT O

EXHIBIT O

1    Secondly, I'm really sorry that she's not happy about the fact

2    that there's so much religion coming into this.  This is part

3    of the worldwide Seventh-day Adventist Church.  It is only

4    there because of it -- it is a religious entity.  The

5    university's only there.  LLUHEC is only there.  The school is

6    only there.  The hospital is only there because of religion.

7    And if there's too much religion for them, maybe they shouldn't

8    be here.

9         HEARING OFFICER SCOTT:  Okay.  Thank you for that.

10        Can you rephrase the question, Ms. Posner, please?

11        MS. POSNER:  Sure.

12   Q    BY MS. POSNER:  So Mr.  Lee, you testified earlier that

13   when interviewing residents, you take into account whether

14   they're a member of the SDA; isn't that true?

15   A    We use a holistic process when we evaluate all of our

16   residents, and that includes whether they agree with the

17   mission of our institution.

18   Q    Right.  But isn't it true that earlier you did testify

19   that you do consider not just as part of the holistic whether

20   they align with the mission, but specifically you do consider

21   whether these applicants are members of the SDA?

22        MR. BERMAN:  Objection, asked and answered.  She's test --

23   she's already testified -- she's already stated that he

24   testified to that.

25        MS. POSNER:  I'm asking yes or no questions, Madam Hearing



EXHIBIT O

EXHIBIT O

1    Officer.

2          HEARING OFFICER SCOTT:  Thank you.  Thank you.  The

3    objection is overruled.  She is confirming testimony, so I will

4    allow the question.

5    A    It is one of the factors that we consider when we choose

6    residents.

7    Q    BY MS. POSNER:  So is your testimony now with me that you

8    don't recall your testimony earlier with Mr. Berman?

9    A    I would say aligning with our mission is very important

10   when we choose residents in our program.  And if you are a

11   member of a faith background that helps you align with our

12   mission, then that is something that we consider when we pick

13   residents.

14   Q    It does --

15   A    It doesn't have to be Seventh-day Adventism.

16   Q    Okay.  So then am I correct that you don't recall making

17   such a statement with your testimony with Mr. Berman?  Because

18   I'm just asking you simple yes or no as to what you recall from

19   your testimony earlier?

20         MR. BERMAN:  Objection.  This is not an adversarial

21   proceeding.  This is fact finding.  It's not a question of

22   whether he recalls what testimony he gave or not.  He gave the

23   testimony that he gave.

24         MS. POSNER:  Well -- Madam Hearing Officer, if I may?

25         HEARING OFFICER SCOTT:  Uh-huh.  Yes.



EXHIBIT O                                                    O-17

EXHIBIT O

```
 1        MS. POSNER:  We're getting conflict -- we're getting

 2   conflicting answers here.  And to the extent there's a

 3   conflict, I would like to, for the sake of, you know, fact

 4   finding and figuring out what's at the root of things, I think

 5   it's necessary to clear up any conflicting statements.

 6        HEARING OFFICER SCOTT:  Okay.  And I do think we have

 7   spent a lot of time on this particular inquiry.  I think the

 8   question has been answered.  So I'm going to ask Ms. Posner, if

 9   you will please move on with your line of questioning.

10        MS. POSNER:  Okay.

11   Q    BY MS. POSNER:  Dr. Lee, each residency program has a

12   curriculum that residents need to complete in order to

13   successfully complete the residency program, isn't that

14   correct?

15   A    Yes, that's correct.

16   Q    Okay.  And the particular board for that specialty -- for

17   instance, for internal medicine, it would be the American Board

18   of Internal Medicine, as well as ACGME, set those curriculum

19   components; isn't that correct?

20   A    I believe so.  I can only comment on family medicine as a

21   family medicine physician.

22   Q    Okay.  So then for family medicine, there are both ACGME

23   and national board components to the curriculum, correct?

24   A    That's correct.

25   Q    Okay.  And neither the national board nor the ACGME
```



EXHIBIT

EXHIBIT O

1    includes spiritual training as part of that curriculum.  Isn't

2    that right?

3    A     Not explicitly, no.

4    Q     Okay.  And I want to make sure I understand this right.

5    In order to engage in spiritual training or spiritual rounds,

6    it requires patient consent; isn't that right?

7    A     That's correct.

8    Q     Okay.  And so Loma Linda treats patients regardless of

9    their -- of their religion; isn't that correct?

10   A     That's correct.

11   Q     And so if a patient declines spiritual treatment, that's

12   the end of the inquiry, isn't it?  Or let me rephrase that

13   question.  Loma Linda cannot force a patient to participate in

14   spiritual training; isn't that right?  Spiritual treatment,

15   rather.  Excuse me.

16   A     Yeah, could you repeat -- are you referring to patients or

17   residents?

18   Q     I'm asking about patients.  Isn't it true that Loma Linda

19   cannot force patients --

20         HEARING OFFICER SCOTT:  I'm --

21   Q     BY MS. POSNER:  -- to participate in spiritual treatment?

22         HEARING OFFICER SCOTT:  I'm sorry.

23         Mr. Berman, are you having difficulty hearing?  I'm -- I'm

24   seeing some gesturing.

25         MR. BERMAN:  Excuse me, Madam Hearing Officer.  We



EXHIBIT O                                              O-19

EXHIBIT O

1    lost connection, and I don't know how long this has been going

2    on.  We couldn't hear.  Only a few minutes here.  We -- the --

3    the Citrix phone system went down.  And now we're calling in on

4    my cell phone.  Can you hear us?

5         HEARING OFFICER SCOTT:  Oh.  I can hear you, yes.

6         MR. BERMAN:  All right.  So we did not hear whatever the

7    last minute and a half, two minutes were.

8         MR. ROWLEY:  When I -- when I started waving my hands,

9    that's when we couldn't hear.

10        HEARING OFFICER SCOTT:  Okay.

11        MR. BERMAN:  So I think we need to go -- I don't know if

12   the reporter can play it back.  I'm not quite sure.

13        HEARING OFFICER SCOTT:  We cannot play back.  Did --

14        THE COURT REPORTER:  Do you remember what the question

15   was?

16        MR. ROWLEY:  Yeah.

17        HEARING OFFICER SCOTT:  Ms. Posner?

18        MR. ROWLEY:  I don't remember the question but it was

19   right after the hearing officer asked Ms. Posner to move on to

20   another topic.

21        HEARING OFFICER SCOTT:  Okay.  And then Ms. Posner, I

22   think that's where you started asking questions about the

23   spiritual rounds.

24        MS. POSNER:  Well, first I asked questions about

25   curriculum and the sources of curriculum.



EXHIBIT O

EXHIBIT O

 1          HEARING OFFICER SCOTT:  Ah, okay.  Thank you.

 2          MR. BERMAN:  Then we didn't get any of that, I think the

 3     only thing we got is a set of ACGME requirements and then she

 4     may have said that some other set of requirements, and then

 5     that's when our phone system went down.

 6          HEARING OFFICER SCOTT:  Okay.

 7          MR. BERMAN:  David, do you represent CWA, maybe you can

 8     get us some help over here.

 9          HEARING OFFICER SCOTT:  Okay.  So would you mind please

10     going back and -- and -- well, the -- the testimony has already

11     been provided, so I will review.  There was questions about the

12     curriculum and the requirements from the national boards and

13     ACGME, and that neither the national boards or ACGME have

14     religious training included in the curriculum.  And then we

15     turn to the spiritual rounds and the consent of the patient.

16          MR. BERMAN:  Yeah, we didn't -- we didn't hear that, so I

17     don't know what the question were and what the answers were or

18     whether there were objections.

19          HEARING OFFICER SCOTT:  Ms. Posner, will you please --

20          MS. POSNER:  I can summarize the testimony.

21          HEARING OFFICER SCOTT:  No, that's okay.  That's what I

22     just did, and -- give me a moment, please.  Sorry.

23          We'll go off the record, Robin.

24     (Off the record at 5:09 p.m.)

25          HEARING OFFICER SCOTT:  Okay.  All right.  Just so the



EXHIBIT O

```
1    record is clear, we went off the record due to a little

2    technal -- technical issue.  I'm not going to have the

3    questions repeated.  The court reporter cannot replay -- play

4    back the testimony, so there's not much we can do at this

5    point.  We're going to proceed.

6         So Ms. Posner, you can continue.

7         MS. POSNER:  Thank you.

8                    RESUMED CROSS-EXAMINATION

9    Q    BY MS. POSNER:  Now, Dr. Lee, do you know specifically

10   what -- what's -- we're going to -- I'm going to focus on the

11   PowerPoints that were admitted into evidence that you testified

12   about earlier.  Sitting here today, can you identify how many

13   other departments use those PowerPoints?

14        A    I cannot tell you an exact number, although I know

15   I've given -- personally given this presentation to several

16   departments within the university.

17   Q    Within the university or residency programs?

18   A    I'm sorry, within residency programs.

19   Q    Okay.  And was your presentation mandatory for your

20   residents?

21   A    It's part of their residency curriculum.

22   Q    So does that mean it's mandatory?

23   A    Attendance is mandatory, yes.

24   Q    Okay.  And who was responsible for making the decision

25   that attendance would be mandatory?
```



EXHIBIT O

1    A    The residency program requires -- our residency program

2    requires that -- that didactic attendance be 100 percent.

3    Q    Okay.  So who made the decision then?

4         MR. BERMAN:  Objection as to relevance.  Even within his

5    own programs, he testified that it's mandatory.

6         HEARING OFFICER SCOTT:  Ms. -- Ms. Posner, do you have a

7    response?

8         MS. POSNER:  I'm trying to just understand the scope of

9    how many residents have gone through this and at what level the

10   decision was ordered, and who specifically decided what -- what

11   this curriculum would be, because it's not required by ACGME or

12   the board, as the -- as Dr. Lee testified.

13        HEARING OFFICER SCOTT:  Okay.  And just so I'm clear, your

14   questions are specific to the family medicine program?

15        MS. POSNER:  Yes.

16        HEARING OFFICER SCOTT:  Okay.  The objection is overruled.

17   I'll allow the testimony.

18   A    The faculty have made a decision, a joint decision that

19   didactic attendance is mandatory.

20   Q    BY MS. POSNER:  Right.  But my questions are specific to

21   this spiritual health curriculum.

22   A    I'm not sure I can comment specifically on the spiritual

23   care curriculum.  What I would say is our didactics are

24   mandatory that our residents engage and participate, unless

25   they have a consciescense -- conscientious objection and -- and



EXHIBIT O

EXHIBIT O

1    would choose not to participate.

2    Q    So as you sit here today, can you tell me how many

3    residents have gone through the spiritual care curriculum?

4         MR. BERMAN:  Madam Hearing Officer, I want to underscore

5    this is only within his department.

6         MS. POSNER:  No, not this question.

7         HEARING OFFICER SCOTT:  Okay.  Was there an objection?

8    You -- you wanted to underscore, but there was no objection.

9         MR. BERMAN:  Oh, no.  I guess -- well, I probably should,

10   because you -- you had made a comment that she was asking

11   questions only to the department, and she said yes.  I wanted

12   to make sure that was continuing, because the way she's asking

13   the questions, it could be broader.

14        HEARING OFFICER SCOTT:  Okay.  And I think she clarified

15   that no, this is not specific to the family medicine program.

16   So then --

17        MR. BERMAN:  Correct.

18   A    Could you repeat your question?

19   Q    BY MS. POSNER:  Sure.  So considering that this is not

20   limited to the family medicine program, can you identify how

21   many residents have gone through this spiritual training

22   curriculum?

23   A    I can't give you an exact number.

24   Q    Okay.  And other than -- than your department of family

25   medicine, can you identify another department for whom this is



EXHIBIT O

1    a mandatory curriculum?

2    A    There are several other residency programs that have

3    incorporated this curriculum into their didactic series.  I

4    cannot comment on how -- whether or not they have chosen to

5    make that mandatory.

6    Q    Okay.  So just to be clear, outside of your department,

7    you don't know whether it's mandatory?

8    A    I do not.

9    Q    Okay.  Are you aware that not all residency programs,

10   i.e., outside of family health -- that not all residency

11   programs use spiritual rounds?

12   A    Yes.

13   Q    And if a patient declines to participate in a spiritual

14   round, isn't it true that they will still receive the same

15   standard of medical care as a patient who does consent to the

16   spiritual round?

17   A    Yes.

18   Q    Okay.  And isn't it true that residents go through

19   periodic evaluations in order to track their progress?

20   A    Yes.

21   Q    And these evaluations tests their understanding of medical

22   knowledge as well as their ability to perform certain

23   procedures?

24   A    Yes.

25   Q    Okay.  Isn't it true that spiritual history and spiritual



EXHIBIT O

1    treatment is not included on residency evaluations?

2    A    Are you asking about family medicine or all residency

3    programs?

4    Q    Well, we'll start with family medicine.

5    A    That specific skill is not asked in any evaluation that we

6    have.

7    Q    And do you have any reason for believing it would be part

8    of an evaluation for any program other than family medicine?

9    A    I can't comment on that.

10   Q    Okay.  So with respect to creating a spiritual plan, I --

11   is this -- is that curriculum only for patients who would --

12   who are members of the SDA?

13   A    No.

14   Q    So if a patient identifies as Jewish and identifies an

15   interest in -- in being provided with a spiritual plan, are

16   residents expected to create a spiritual plan for a Jewish

17   patient?

18   A    Yes.

19   Q    And same thing for a Muslim patient?

20   A    Yes.

21   Q    And a Catholic patient?

22   A    Yes.

23   Q    And that expectation is without any regard to the personal

24   faith of the residents; isn't that right?

25   A    Yes.



EXHIBIT O

1    Q    Okay.  Now, earlier you were testifying that you are aware

2    of the existence of medical missions that are sponsored by the

3    Church.  Do you recall that?

4    A    Yes.

5    Q    Okay.  Those are voluntary, correct?

6    A    Yes.

7    Q    Now, earlier you also testified that the spiritual health

8    curriculum or -- I'm sorry.  Let's -- scratch that.  Earlier,

9    you testified that residents are able to go to the center for

10   whole person care or the school of religion if they wanted to

11   seek further resources; isn't that correct?

12   A    Yes.

13   Q    Okay.  Isn't it true that the school of religion is a

14   separate entity from a LLUHEC residency -- from the LLUHEC

15   residency program?

16   A    Yes.

17   Q    And residents are not required to have any interaction

18   with the school of religion; isn't that right?

19   A    Yes.

20   Q    And similarly, residents are not required to seek out the

21   center for whole person care, isn't that correct?

22   A    Yes.

23   Q    Okay.  Are you aware, Dr. Lee, that there can be penalties

24   for a residency program that fails to comply with ACGME

25   requirements?



EXHIBIT

EXHIBIT O

```
 1        MR. BERMAN:  Objection.  Lack of relevance.  And if

 2   there's a law like that, the law speaks for itself.

 3        HEARING OFFICER SCOTT:  Okay.  Ms. Posner, you have a

 4   response?

 5        MS. POSNER:  With all due -- with all due respect, it's

 6   not a law.  It is a voluntary opt-in program that LLUHEC

 7   residency programs participate in that Dr. Lee has testified

 8   that he participates in selecting residents for.  And so I want

 9   to make sure that I understand his testimony earlier about the

10   emphasis that is placed on the religion of a particular

11   applicant for residency program.

12        HEARING OFFICER SCOTT:  Okay.

13        MR. BERMAN:  If it -- can -- if Madam Hearing Officer, if

14   there is such a rule, then the rule is the best evidence, not

15   what he knows about the rule and not knowing -- whether he

16   knows about there's a penalty for violating the rule.  It has

17   no relevance at all.

18        HEARING OFFICER SCOTT:  Okay.  Thank you.  The -- I'm

19   going to overrule the objection and to the extent Dr. Lee knows

20   the answer, I will ask him to answer.

21   A    I am aware that there are things known as match

22   violations.

23   Q    BY MS. POSNER:  And what do you understand a match

24   violation to be?

25   A    If a program or an applicant doesn't follow the rules that
```



EXHIBIT O

EXHIBIT O

```
1    are established by NRMP, then either the program or the
2    applicant could -- there could be consequences for them.
3    Q    Okay.
4         HEARING OFFICER SCOTT:  If I can interject just briefly.
5    Do you know what the acronym NRMP stands for?
6         THE WITNESS:  National Residency Matching Program.
7         HEARING OFFICER SCOTT:  Okay.
8         Ms. Posner, you can continue.  Thank you.
9         MS. POSNER:  Yeah.
10   Q    BY MS. POSNER:  The NRMP though is a -- is different than
11   ACGME; isn't it?
12   A    I believe they're affiliated, although I cannot -- I'm not
13   sure.
14   Q    Okay.
15        MS. POSNER:  I would like to share my screen and show a
16   document, that once we figure out the technical glitches will
17   be uploaded to the SharePoint.
18        HEARING OFFICER SCOTT:  Are you able to email that to
19   everyone right now?
20        MS. POSNER:  Yes.
21        MR. BERMAN:  Yeah.  Yeah, we were supposed to have it
22   earlier.
23        MS. POSNER:  Okay, I sent it back by replying to one of
24   Ms. Mora's emails that came through.
25        HEARING OFFICER SCOTT:  Thank you.  Okay, it just came
```



EXHIBIT O

EXHIBIT O

1    across on my email.  Mr. Berman, can you confirm that?

2         MR. BERMAN:  Yes.  We got it, and we're printing it out.

3         HEARING OFFICER SCOTT:  Okay.  I'm sending this to Robin

4    as well, to the court reporter.

5         Okay.  Ms. Posner, you should have sharing capabilities.

6         MS. POSNER:  Thank you.  I guess we're missing the

7    witness, even though he's still on the stand under oath.  There

8    he is.  And once we figure this out, this can be marked as

9    Union Exhibit 1.

10        HEARING OFFICER SCOTT:  Okay.

11        MR. BERMAN:  Can we just be off the record for a second so

12   I can take a look at this, please?

13        HEARING OFFICER SCOTT:  Okay.  We'll be off the record for

14   a moment.  Five minutes, off the record.

15   (Off the record at 5:29 p.m.)

16        HEARING OFFICER SCOTT:  All right.  Ms. Posner, if you

17   want to continue?  Are you sharing your screen yet?  I don't

18   see it.

19        MS. POSNER:  I am now.

20        HEARING OFFICER SCOTT:  Okay.

21                    **RESUMED CROSS-EXAMINATION**

22   Q    BY MS. POSNER:  Okay, I'm sharing this document, which

23   is -- consists of ACGME institutional requirements for program

24   sponsors for residency requirements, and I want to direct your

25   attention, Dr. Lee, to -- well, first of all, have you seen



EXHIBIT O

1    this document before?

2    A    No, I don't think so.

3    Q    So then, are -- is it your understanding that there's no

4    prohibition on religious discrimination?

5        MR. BERMAN:  Objection.  Been asked and answered that a

6    bunch of times.  It has nothing to do with this case at all.

7    This is a really good example as to why we shouldn't be here.

8    The First Amendment bars --

9        MS. POSNER:  Well, we're not --

10       MR. BERMAN:  -- this kind of -- excuse me --

11       HEARING OFFICER SCOTT:  Yes.

12       MR. BERMAN:  -- bars this kind -- and it especially bars

13   this kind of inquiry when she's asking him questions about a

14   document that he's never seen.

15       MS. POSNER:  Well, that's fine.  I'll take the document

16   down.  I'll ask a different question.

17   Q    BY MS. POSNER:  Dr. Lee, you're not permitted to

18   discriminate against applicants for residency programs and

19   resident on the basis of race, are you?

20   A    No.

21       MR. BERMAN:  Objection.  Has (audio interference) do with

22   this case.

23       MS. POSNER:  Well, at least in part, it goes to employee

24   status, to that question, and to obligations as an employer.

25       HEARING OFFICER SCOTT:  Okay.  Thank you.



EXHIBIT O

1        MR. BERMAN:  It -- it --

2        HEARING OFFICER SCOTT:  Once again -- once again, I'm just

3    going to remind everyone to please make sure that we are taking

4    turns in speaking.  We want to make sure that everything is

5    coming across for the transcript.  I'll ask the parties again

6    not to direct their comments to one another, but instead to me.

7    And I will ask for a response at the appropriate time, okay?

8        So the question was whether or not residency programs can

9    discriminate against residents based on race; is that correct?

10       MS. POSNER:  That is correct.

11       HEARING OFFICER SCOTT:  Okay.  And what was the objection,

12   please?

13       MR. BERMAN:  The objection was that this is totally not --

14   not relevant, not relevant to any issue here.  And if there are

15   laws or rules or regulations that prohibit that, then you know,

16   maybe he should be shown those.  But in any event, it doesn't

17   matter.  It has nothing to do with this case at all.

18       HEARING OFFICER SCOTT:  Okay.  Thank you for that.  I'm

19   going to allow the testimony.  I'm going to overrule the

20   objection.  And to the extent Mr. Lee has this knowledge, I

21   will ask him to answer the question.

22   A    I'm sorry, could you repeat your question?

23   Q    BY MS. POSNER:  Sure.  Dr. Lee, in your capacity as

24   someone who helps rank and select residents for the family

25   medicine program, you are aware that you are not permitted to



EXHIBIT O

1   discriminate on the basis of race against applicants or

2   residents, correct?

3   A    Yes.

4   Q    Okay.  And you're also aware that in your capacity as

5   someone who ranks applicants for the match for residency, and

6   as someone who oversees the residency program, you're not

7   allowed to discriminate against residents or applicants on the

8   basis of their gender, correct?

9   A    Yes.

10        MR. BERMAN:  Objection.  The same objection, and I ask

11   that the answer be stricken.  It has nothing to do with any --

12   with employee status, or jurisdiction, or any other issue that

13   is before the Labor Board.  And if there are rules and laws

14   that apply, then they ought to put them in the brief.

15        HEARING OFFICER SCOTT:  Okay.  Thank you for that.  The

16   objection is overruled.

17        Ms. -- Dr. Lee, will you please answer the question?

18   A    Yes.

19   Q    BY MS. POSNER:  And in your capacity as someone who ranks

20   residency applicants and -- for the match, and as someone who

21   oversees the residency program, you're aware that you're not

22   permitted to discriminate against either applicants or

23   residents on the basis of national origin, correct?

24        MR. BERMAN:  Same objections.

25   A    Yes.



EXHIBIT O

1        HEARING OFFICER SCOTT:  Okay.  Your objection is noted.

2    The objection is overruled.

3        Dr. Lee, I'm sorry.  If I can ask you to repeat your

4    answer?

5        THE WITNESS:  Yes.

6        HEARING OFFICER SCOTT:  Okay.

7    Q    BY MS. POSNER:  So let me ask this question one more time.

8    In your capacity as someone who ranks residents -- resident

9    applications for the match, and as someone who oversees a

10   residency program, are you aware that you are prohibited from

11   discriminating against applicants and residents on the basis of

12   religion?

13       MR. BERMAN:  Objection, several.  First, First Amendment

14   objection, strong First Amendment objection.  Also, he is not a

15   lawyer, and none of this is relevant.  If there are such rules,

16   whether they're laws or regulations, then she ought to put them

17   in her brief, not ask him.  This is not law school.

18       HEARING OFFICER SCOTT:  Okay.  Your objection is noted.

19   He has -- he has testified that he participates in the

20   interview and in the ranking of applicants.  I am going to

21   overrule the objection and ask Ms. -- ask -- excuse me -- Dr.

22   Lee to answer.

23   A    Yeah, could you repeat your question again?

24   Q    BY MS. POSNER:  Sure.  As someone who ranks applicants for

25   the re -- for the match for the residency program, and as



EXHIBIT O

```
1    someone who oversees a residency program, isn't it true that

2    you are prohibited from discriminating against either

3    applicants for a residency program or your residents on the

4    basis of religion?

5    A    Yes.

6         MR. BERMAN:  Same objection.

7         HEARING OFFICER SCOTT:  Thank you.  The objection was

8    noted.  She was rephrasing the question, and it's been

9    answered.

10        MS. POSNER:  Thank you, Madam Hearing Officer.

11   Q    BY MS. POSNER:  Now, Dr. Lee, earlier, you -- do you

12   recall testifying that not all of Loma Linda's patients are

13   members of SDA?

14   A    Yes.

15   Q    Okay.  Do you know approximately how many of Loma Linda's

16   patients are SDA members?

17   A    I do not.

18   Q    Okay.  And do you know how many patients at Loma Linda

19   agree to participate in spiritual rounds?

20   A    I do not.

21        MS. POSNER:  Okay.  No further questions.

22        HEARING OFFICER SCOTT:  Okay.  I do have just a couple.

23        Dr. Lee, in your program, do you know the total number of

24   residents that you currently have in your program, in the

25   family medicine?
```



EXHIBIT O

1    testimony that it is a world-class medical education, that we

2    follow ACGME standards, that -- that the beliefs and values of

3    the church are fully consistent with those standards, but it is

4    clearly identified as a Seventh-day Adventist organization.

5    It's on the buildings.  It's in the buildings.  It's on the

6    orientation videos.  It's in the materials.  It's part of the

7    curriculum that in many of the residencies' departments.

8    There's not a single resident or fellow who goes to this school

9    who does not understand that the school is owned and operated

10   by the Seventh-day Adventist Church.  Period.

11        HEARING OFFICER SCOTT:  Okay.  Thank you both.  We will

12   take a half hour break, so that puts us at quarter after --

13   quarter after 2.

14        MR. ROWLEY:  Thank you.

15        HEARING OFFICER SCOTT:  We'll be back on the record then.

16   (Off the record at 1:47 p.m.)

17        HEARING OFFICER SCOTT:  Thank you so much.  Okay, so

18   earlier, the Employer made a motion for an adjournment.  The

19   Regional Director is denying the motion to adjourn the hearing.

20   In doing so, she notes the case of Grutka v. Barbour, 549 F.2d

21   5, 7th Circuit, 1977, and that it is necessary to develop an

22   evidentiary record to determine whether the Employer's First

23   Amendment challenge to the Board's jurisdiction has merit.

24        She further notes that district courts generally do not

25   have jurisdiction to enjoin the National Labor Relations Board



EXHIBIT O                                                                43

1    from conducting representation proceedings.  The Regional

2    Director is also denying the motion for an expedited hearing,

3    and that the Regional Director will allow the hearing officer

4    to determine the hours of the hearing for each day that the

5    hearing continues.

6        Okay.  The Regional Director has directed that the

7    following issues will be litigated in this proceeding:  The

8    first issue is whether the Board may assert jurisdiction, or

9    whether it is not appropriate to assert jurisdiction because

10   the Employer is a religious institution, including whether a

11   ministerial exception applies.  That will be the Employer's

12   burden.

13       The next issue is whether residents and fellows are

14   employees under Section 2(3) of the Act.  That will be the

15   Employer's burden.

16       Next is whether residents and fellows should be excluded

17   as temporary employees.  That is the Employer's burden.

18       Although the Employer has withdrawn the dispute regarding

19   the community of interest between residents and fellows,

20   because the parties have not stipulated to the appropriateness

21   of the unit, or to the community of interest factors, it will

22   be necessary to develop the record with respect to the

23   community of interest factors between the residents and

24   fellows.

25       As I mentioned, we're going to begin with the Employer.



EXHIBIT O

1    which has as its constituency all the -- the union conferences.

2    And the General Conference provides the overarching structure

3    that binds everything together.

4    Q    Is LLUHEC considered to be a local church or a conference

5    or a union, or where does it fit into the -- to the Church?

6    A    So no, it would be regarded as an institution.  The Church

7    has many institutions, something as we've already covered --

8    addressed.  Some of them are what are known as conference

9    institutions, which means they're directly responsible to a

10   conference.  That's typically schools, healthcare institutions,

11   and colleges or universities are very often responsible to a

12   union-level of -- of the Church structure.  And then there are

13   some institutions that are directly under the General

14   Conference.

15   Q    And LLUHEC is one of those that are directly under the

16   General Conference?

17   A    Yes.

18   Q    And what about Loma Linda University?

19   A    Yes.

20        MS. POSNER:  Objection.  Relevance.  Loma Linda University

21   is not a party in this proceeding.

22        HEARING OFFICER SCOTT:  Yes.  If we can --

23        MR. BERMAN:  Okay.

24        HEARING OFFICER SCOTT:  -- yes.  We -- we -- we need to

25   keep it focused on LLUHEC.  I understand the importance of