# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Loma Linda – Inland Empire Consortium<br>For Healthcare Education<br>d/b/a<br>Loma Linda University Health<br>Education Consortium<br>11175 Campus Street<br>Loma Linda, CA 92354<br><br>         Plaintiff<br><br>     v.<br><br>National Labor Relations Board<br>1015 Half Street, SE<br>Washington, DC 20003<br><br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 21-cv-00688-CKK<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S OPPOSITION TO THE NATIONAL LABOR RELATIONS BOARD'S MOTION TO TRANSFER VENUE AND REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I. The NLRB Repeatedly Has Been Admonished For Failing to Respect the First Amendment Rights of Religious Educational Institutions .................................................. 2

II. LLUHEC's Action Is Properly Brought in this Court ....................................................... 6

III. The Court Should Not Transfer This Suit to the Central District of California ................. 8

    A. This Action Could Have Been Brought in the Central District of California .................................................................................................... 9

    B. The Private Considerations Disfavor Transfer of LLUHEC's Suit ........................ 9

    C. The Public Considerations Also Disfavor Transfer of LLUHEC's Suit .............. 14

    D. Additional Considerations of Justice Disfavor the Transfer of LLUHEC's Suit and Demonstrate that the *Leedom v. Kyne* Exception Applies ................................................................................................... 18

IV. Conclusion ..................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aishat v. Dept. of Homeland Sec.*,
    288 F. Supp. 3d 261 (D.D.C. 2018) ...................................................................12

*Bethany College*,
    369 NLRB No. 98 (2020) ........................................................................ *passim*

*Cap Santa Vue, Inc., v. NLRB*,
    424 F.2d 890 (D.C. Cir. 1970) ...................................................................19

*Carroll College, Inc.*,
    350 NLRB No. 30 (2007) ........................................................................ *passim*

*Carroll College v. NLRB*,
    558 F.3d 568 (D.C. Cir. 2009) ............................................................3, 16, 17

*Caulfield v. Hirsch*,
    1977 WL 15572 (E.D. Pa. July 7, 1977) ...............................................................6

*Center for Biological Diversity v. Ross*,
    310 F.Supp. 3d 119 (D.D.C. 2018) ...................................................................15

*Dastmalchian v. Dept. of Justice*,
    71 F.Supp. 3d 173 (D.D.C. 2014)) ...................................................................7

*In re DRC, Inc.*,
    358 Fed. Appx. 193 (D.C. Cir. 2009) ...................................................................9

*Duquesne University of the Holy Spirit*,
    366 NLRB No. 27 (2018) ........................................................................ *passim*

*Duquesne University of the Holy Spirit v. NLRB*,
    947 F.3d 824 (D.C. Cir. 2020) ........................................................................ *passim*

*Elrod v. Burns*,
    427 U.S. 347 (1976) ...................................................................18

*Foote v. Chu*,
    858 F.Supp. 2d 116 (D.D.C. 2012) ...................................................................9

*Galindo v. Gonzalez*,
    550 F.Supp. 2d 115 (D.D.C. 2008) ...................................................................7

93679692v.10

*Garcia v. Acosta*,
   393 F.Supp. 3d 93 (D.D.C. 2019) (finding Department of Labor to reside in
   District of Columbia) ..................................................................................................7, 11

*Greater Yellowstone v. Bosworth*,
   180 F.Supp.2d 124 (D.D.C. 2001) ...................................................................................12

*Heartland Plymouth Court MI, LLC v. NLRB*,
   838 F.3d 16 (D.C. Cir. 2016) .......................................................................................1, 13

*Lamont v. Haig*,
   590 F.2d 1124 (D.C. Cir. 1978) .........................................................................................7

*Leedom v. Kyne*,
   358 U.S. 184 (1958)...................................................................................3, 6, 18, 22

*Mashpee Wampanoag Tribe v. Zinke*,
   2019 WL 2569919 (D.D.C. 2019) ...............................................................................11, 14

*McCormick v. Hirsch*,
   460 F.Supp. 1337 (M.D. Pa. 1978) ....................................................................................6

*NLRB v. Catholic Bishop of Chicago*
   440 U.S. 490 (1979).................................................................................... *passim*

*NLRB v. Curtin Matheson Scientific, Inc.*,
   494 U.S. 775 (1990).........................................................................................................10

*NLRB v. Hanna Boys Center*,
   940 F.2d 1295 (9th Cir. 1991) ....................................................................................12, 15

*Oceana, Inc. v. Pritzker*,
   58 F.Supp. 3d. 2 (D.D.C. 2013) ......................................................................................11

*Renchard v. Prince William Marine Sales, Inc.*,
   28 F.Supp. 3d 1 (D.D.C. 2014) ........................................................................................10

*Sandpiper Residents Assoc. v. U.S. Dept. Of Housing and Urban Development*,
   2021 WL 2582005 (D.D.C. 2021) ...........................................................................7, 11, 13

*Southern Poverty Law Center v. U.S. Dept. of Homeland Security*,
   2019 WL 2077120 (D.D.C. 2019) .......................................................................7, 8, 11, 18

*St. Elizabeth Community Hosp. v. NLRB*,
   708 F.2d 1436 (9th Cir. 1983) .........................................................................................12

*Stand Up for California! v. U.S. Dept. of the Interior*,
   919 F. Supp. 2d 51 (D.D.C. 2013) ...................................................................................18

*Stewart v. Azar*,
    308 F.Supp. 3d 239 (D.D.C. 2018) ..........................................................................14

*The Wilderness Soc. v. Babbitt*,
    104 F.Supp. 2d 10 (D.D.C. 2000) .................................................................9, 10, 11

*Trout Unlimited v. U.S. Dept. of Agriculture*,
    944 F.Supp. 13 (D.D.C. 1996) ..............................................................................8, 12

*Tuttle v. Jewell*,
    952 F.Supp.2d 203 (D.D.C. 2013) ............................................................................14

*Universidad Central de Bayamon v. NLRB*,
    793 F.2d 383 (1st Cir. 1985) ..................................................................................4, 12

*University of Great Falls*,
    331 NLRB 1663 (2000) ...............................................................................................2

*University of Great Falls v. NLRB*,
    278 F.3d 1335 (D.C. Cir. 2002) ........................................................................ *passim*

**Statutes**

28 U.S.C. § 1391(e)(1)........................................................................................................6, 7

28 U.S.C. § 1404(a) ...................................................................................................1, 8, 9, 18

29 U.S.C. § 151, et. Seq. .........................................................................................3, 17, 22

29 U.S.C. § 160(f).................................................................................................................17

Bloomberg Law ....................................................................................................................22

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 15 Fed. Prac.and Proc. § 3848 (4th ed.
    2013) .......................................................................................................................9

First Amendment ..................................................................................................... *passim*

Daily Labor Report (April 3, 2023) .......................................................................................22

General Counsel in Memorandum GC 21-04 ........................................................................13

Plaintiff Loma Linda – Inland Empire Consortium for Healthcare Education d/b/a Loma Linda University Health Education Consortium ("LLUHEC") submits its opposition to the National Labor Relations Board's ("NLRB" or "Board") Motion to Transfer Venue and its reply to the Board's Opposition to Plaintiff's Motion for Preliminary Injunction.[1] For the reasons below, the Court should not transfer this matter, and should grant the preliminary injunction.

The NLRB's current standard for evaluating its jurisdiction over religious educational institutions -- *Bethany College,* 369 NLRB No. 98 (2020) -- is based on the D.C. Circuit Court of Appeal's decision in *University of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002). Prior to adopting the constitutionally-mandated *Great Falls* test, the Board repeatedly had been reprimanded by the D.C. Circuit and other courts for refusing to adopt this test and exercising jurisdiction in violation of the First Amendment as interpreted by the Supreme Court in *NLRB v. Catholic Bishop of Chicago* 440 U.S. 490 (1979). The NLRB's venue transfer motion is part of a concerted effort to evade the directives of the D.C. Circuit.[2] Such forum shopping, especially by a federal agency, should not be countenanced.

Further, an order enjoining the NLRB from exercise of jurisdiction is necessary because the Board is continuing to cause LLUHEC irreparable harm by injuring its well-established First Amendment rights.

---

[1] Although the document filed by the Board is entitled "Defendant National Labor Relations Board's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)," the accompanying Statement of Points and Authorities states that it is also filed "In Opposition to Plaintiff Loma Linda University Health Consortium's Motion for Preliminary Injunction."

[2] As the D.C. Circuit reproached the Board in *Heartland Plymouth Court MI, LLC v. NLRB*, 838 F.3d 16, 18 (D.C. Cir. 2016), "the Board''s longstanding 'nonacquiescence' towards the law of any circuit diverging from the Board's preferred national labor policy takes obduracy to a new level. As this case shows, what the Board proffers as a sophisticated tool towards national uniformity can just as easily be an instrument of oppression, allowing the government to tell its citizens: 'We don't care what the law says, if you want to beat us, you will have to fight us.'"

**I.      The NLRB Repeatedly Has Been Admonished For Failing to Respect the First Amendment Rights of Religious Educational Institutions**

The Board's description of its processes (Document 18, pp. 1-3) obscures how the NLRB has *in fact* handled cases involving religious educational institutions.

The D.C. and First Circuits repeatedly have admonished the Board for failing to appropriately recognize and protect the First Amendment rights of religious educational institutions. An understanding of this history is essential to the Court's evaluation of the NLRB's venue transfer motion.

In 2000, the NLRB considered whether it had jurisdiction over a Catholic university in Montana as part of a union representation proceeding. *University of Great Falls,* 331 NLRB 1663 (2000). The Board held that it had jurisdiction, based on its newly-created "substantial religious character" test. *Id.* at 1666.

Great Falls petitioned the D.C. Circuit for review. *University of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002). The Court castigated the Board for "trolling through the beliefs of the University, making determinations about its religious mission." *Id.* at 1342. The Court emphasized that the Supreme Court's decision in "*Catholic Bishop* . . . requires a different approach," and the D.C. Circuit established a "bright line test" to determine if a religious educational institution is exempt from Board jurisdiction.[3] *Id.* at 1343, 1345. The Court explained that this test "avoids the constitutional infirmities of the NLRB's 'substantial religious character' test." *Id.* at 1344. The D.C. Circuit then applied its test and found that the NLRB could not exercise jurisdiction over Great Falls. *Id.* at 1347.

---

[3] See Document 6-1 at pp. 8-11 for a more complete description of *University of Great Falls v. NLRB* and its application to the facts of this case.

In 2007, the Board again had to determine whether it possessed jurisdiction over a Presbyterian college located in Wisconsin. *Carroll College, Inc.*, 350 NLRB No. 30 (2007). Stung by the D.C. Circuit's *Great Falls* decision and equipped with the bright line test, one would have presumed that the NLRB would apply the *Great Falls* test to ensure that the college's First Amendment rights were protected. Instead, the Board asserted jurisdiction over Carroll College. 350 NLRB No. 30 at pp. 3-4.

Carroll College petitioned the D.C. Circuit for review. *Carroll College v. NLRB*, 558 F.3d 568 (D.C. Cir. 2009). The Court applied its bright line test from *Great Falls* and held that the college "easily satisfie[d] the *Great Falls* test." *Carroll College*, 558 F.3d at 572. The D.C. Circuit found that the Board "should have known immediately that the college was entitled to a *Catholic Bishop* exemption from the National Labor Relation Act's ("NLRA"), 29 U.S.C 151 et seq., collective bargaining requirements." *Id.* at 574.

In 2017, the NLRB had to determine whether it possessed jurisdiction over a Catholic university in Pennsylvania. *Duquesne University of the Holy Spirit,* 2017 WL 1330294 (2017). Yet again, the Board obstinately refused to acquiesce to binding D.C. Circuit authority, and concluded that it did have jurisdiction. *Id.*

Duquesne University petitioned the D.C. Circuit for review.[4] *Duquesne University of the Holy Spirit v. NLRB,* 947 F.3d 824 (D.C. Cir. 2020). The Court stated the "case begins and ends

---

[4] To obtain judicial review of the NLRB's assumption of jurisdiction, Duquesne University first was forced to violate the National Labor Relations Act ("NLRA" or "Act") by refusing to bargain with the involved union, depend upon the union filing an unfair labor practice charge, proceed through the Board's lengthy administrative process (which the Board describes in Document 18-1 at pp. 1-3), and then petition the D.C. Circuit for review of an adverse ruling. The NLRB issued its jurisdiction decision in April 2017. In January 2020, the D.C. Circuit refused to enforce the Board's related unfair labor practice order. *Duquesne University of the Holy Spirit*, 366 NLRB No. 27 (2018). This nearly three year period is a perfect demonstration of why a party like LLUHEC lacks a meaningful and adequate method of vindicating its rights for

with our decisions in *Great Falls* and *Carroll College*," and held that the Board lacked jurisdiction. *Id.* 832-833. The D.C. Circuit noted that the "parties do not dispute that Duquesne satisfies the test. Nor could they." *Id.* at 833. Just like *Carroll College*, where the Board "should have known immediately that the college was entitled to a *Catholic Bishop* exemption," *Duquesne University* is a case where the NLRB could not even dispute that the school met the *Great Falls* test, but still refused to respect First Amendment rights.[5]

In 2020, the Board once again was required to determine whether it had jurisdiction over a Lutheran college located in Kansas. *Bethany College*, 369 NLRB No. 98 (2020). Having (at least for the time being) learned its lesson from the multiple rebukes from the D.C. Circuit and the First Circuit, the Board acquiesced and adopted the D.C. Circuit's *Great Falls* test. *Id.* at 7-8. When it did so, the NLRB concluded that it *did not* have jurisdiction over the college. *Id.* at 9.

In doing so, the Board candidly acknowledged that its prior approach "refus[ed] to accept reality" and had "until now persisted in defying the risks of First Amendment infringement rather than avoiding them." *Id.* at 8. "Because the Supreme Court ha[d] clearly decided" the NLRB's ability to exercise jurisdiction over religious education institutions, the Board hoped its adoption of the *Great Falls* test would "prevent the type of intrusive inquiries that the Supreme Court prohibited in *Catholic Bishop*." *Id.*

---

purposes of the *Leedom v. Kyne* test. A party should not have to wade through years of litigation when the issue is whether jurisdiction exists in the first place.

[5] The First Circuit, relying on *Catholic Bishop,* also has refused to enforce a NLRB decision asserting jurisdiction over a Catholic university in Puerto Rico. *Universidad Central de Bayamon v. NLRB*, 793 F.2d 383, 401-402 (1st Cir. 1985). Then Judge Breyer writing for the half of the *en banc* court refusing to enforce the NLRB's decision, noted that *Catholic Bishop* "sought to minimize the extent to which Labor Board inquiry . . .would itself entangle the Board in religious affairs" and that such "'entanglement'—arising out of the inquiry process itself--is well illustrated by an excerpt from the record in this case, . . in which counsel questioned church officials [religious matters]." *Id.* at 401-402.

Against this background, the Board's current General Counsel, unhappy with the restrictions *Bethany College* placed on the Board's jurisdiction, issued Memorandum GC 21-04. Exhibit A. This memorandum identifies legal precedent that the General Counsel wishes to overturn and that "compel centralized consideration." Exhibit A at p. 1. Among the issues identified are "cases involving the applicability of *Bethany College*," and its test to determine "whether to assert jurisdiction over religious educational institutions." Exhibit A, at p. 5.[6]

The "centralized consideration" issued by the General Counsel from Board headquarters is formally being applied in a pending case involving a Catholic university, *Saint Leo University, Inc.* Although the Administrative Law Judge ("ALJ") in *Saint Leo* was bound to and did apply *Bethany College*, the General Counsel has filed exceptions to the ALJ decision and is requesting the Board to return to a jurisdictional test that the D.C. Circuit specifically found "cannot be squared with our precedent" and "impermissibly intrudes into religious matters." *Duquesne University v. NLRB*, 947 F.3d at 833-834. The General Counsel would have the NLRB apply a test that the Board itself has admitted "not only fails to avoid the First Amendment questions, it plows right into them at full tilt." *Bethany College*, 369 NLRB No. 98 at p. 6 (internal citations omitted). *See* Exhibit B *Saint Leo's University, Inc.*, JD-23-14 at p. 2 and Exhibit C, Counsel for General Counsel's Brief in *Saint Leo's University, Inc.* at pp. 3, 67-74.

LLUHEC has the misfortune of being the most recent in this long line of religious educational institutions to have its First Amendment rights harmed by the Board. But for the Board's attempt to expand its jurisdiction, this did not have to be so.

---

[6] On March 20, 2023, the General Counsel issued Memorandum GC 23-04 which no longer required "centralized consideration" for cases raising *Bethany College* jurisdictional issues. However, the General Counsel's memorandum follows the Board's headquarters already having issued guidance to its Regional offices on how to proceed in such cases. *See* Exhibit D, Memorandum GC 23-04 at p.1 and n.1 (March 20, 2023).

93679692v.10

LLUHEC requested the NLRB's Regional Director to bifurcate the jurisdictional issue, apply Board law as set forth in *Bethany College,* and decide the jurisdictional question. Exhibit E, Board Docket Excerpts at pp. 1-11. The Regional Director denied LLUHEC's request. Exhibit E, p. 12. LLUHEC then appealed to the Board in Washington, D.C. Exhibit E, pp. 13-23. The Board denied LLUHEC's request *less than an hour before the representation hearing began*.[7] Exhibit E, p. 24. LLUHEC now asks this Court to protect its First Amendment rights and enjoin the Board from continuing its unconstitutional exercise of jurisdiction.[8]

## II.    LLUHEC's Action Is Properly Brought in this Court

The plain language of the federal statute governing venue, as well as relevant authority, make clear that this Court is a proper venue for LLUHEC's suit against the Board. Section 1391(e)(1) states that when an action is brought against an agency of the United States, proper venue is "any judicial district in which (A) a defendant in the action resides, (B) a substantial

---

[7] The Court should disregard the NLRB's argument that LLUHEC is somehow to blame for the violation of its First Amendment rights or inappropriately delayed filing for a preliminary injunction. LLUHEC understandably and efficiently sought to conserve judicial resources and give the Board an opportunity to apply its own precedent and conclude that it lacked jurisdiction. Regrettably, the NLRB failed to do so; and, indeed stated that LLUHEC's request "raised no substantial issues warranting review." Exhibit E at p. 24.  Having exhausted the administrative procedures available to have the jurisdictional question resolved prior to the representation hearing, LLUHEC promptly petitioned this Court for relief. The NLRB now suggests that LLUHEC and similarly-situated parties should first march into court to protect their rights, while at the same time claiming that there is no basis for LLUHEC to have done so under *Leedom v. Kyne*. *See* Document 18 at pp. 31. There are only so many ways the Board can have it.

[8] The Board argues that *Leedom v. Kyne* jurisdiction is only available for infringements of a union's constitutional rights. Document 18 at pp. 26, 31-32; No court, however, has dismissed a *Leedom v. Kyne* action on the grounds that it was brought by an employer. Moreover, the Constitution protects employers equally as unions, and all parties must be afforded timely redress for the violation of their constitutional rights. Indeed, successful *Leedom v. Kyne* suits have been brought by employers. *See McCormick v. Hirsch,* 460 F.Supp. 1337 (M.D. Pa. 1978); and *Caulfield v. Hirsch,* 1977 WL 15572 (E.D. Pa. July 7, 1977).

part of the events or omissions giving rise to the claim occurred, or a substantial part of property

that is the subject of the action is situated, or (C) the plaintiff resides if no real property is

involved in the action." 28 U.S.C. § 1391(e)(1).

The D.C. Circuit has recognized that "[i]f a defendant . . . is the United States or one of

its agencies," then pursuant to Section 1391(e)(1), a "plaintiff may choose from among as many

as three alternative forums where venue is proper. The first is "where a defendant in the action

resides." *Lamont v. Haig,* 590 F.2d 1124, 1128 (D.C. Cir. 1978).

This Court repeatedly has recognized that it is a proper venue for suits against federal

agencies headquartered in the District. *See, e.g.*, *Sandpiper Residents Assoc. v. U.S. Dept. Of

Housing and Urban Development*, 2021 WL 2582005 (D.D.C. 2021) (recognizing the District of

Columbia District as proper venue for complaint filed against Department of Housing and Urban

Development); *Garcia v. Acosta*, 393 F.Supp. 3d 93 (D.D.C. 2019) (finding Department of

Labor to reside in District of Columbia); *Southern Poverty Law Center v. U.S. Dept. of

Homeland Security*, 2019 WL 2077120 (D.D.C. 2019)(finding District of Columbia proper

venue because defendants were federal agencies located in the District); *Dastmalchian v. Dept.

of Justice*, 71 F.Supp. 3d 173, 177 (D.D.C. 2014) (finding venue in this Court proper because

Department of Justice and United States Marshall Service located in the District of Columbia);

*Galindo v. Gonzalez*, 550 F.Supp. 2d 115 (D.D.C. 2008) (finding District of Columbia District

proper venue because defendant Bureau of Prisons located in the District).

The NLRB resides in the District of Columbia, and its Headquarters is located at 1015

Half Street, SE, Washington, DC 20001. This is where the offices of the Board members and the

Office of the General Counsel are located. The Board's website identifies the 1015 Half Street

location as the "Headquarters Mailing Address."

As the instant action is a suit filed against a federal agency located within the District of Columbia, this Court indisputably is a proper venue.

## III.     The Court Should Not Transfer This Suit to the Central District of California

The Court should not transfer LLUHEC's suit to the Central District of California because this Court is a proper venue, and the Board has not established a compelling reason to transfer. Indeed, the relevant considerations plainly disfavor transfer.

A District Court may transfer a civil action to another district where it might have been brought for the convenience of the parties and witnesses, and in the interest of justice. 28 U.S.C. § 1404(a). This Court engages in a two-part analysis when determining whether transfer pursuant to Section 1404(a) is appropriate. *See Southern Poverty Law Center*, 2019 WL 2077120 at *3. First, the Court must ascertain whether the suit might properly have been brought in the proposed district. *Id.* If the transferee court is a proper alternative venue, the Court must balance a number of private and public interests and determine if they favor transfer. *Id.*

The private interests considered by this Court include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. *See, e.g., Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F.Supp. 13, 16 (D.D.C. 1996) (citation omitted).

The public interests include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.*

93679692v.10

As the NLRB recognizes (see Document 18, at p. 9), the party seeking a transfer "'must satisfy a very substantial burden of demonstrating where 'justice' and 'convenience' lie.'" *Foote v. Chu*, 858 F.Supp. 2d 116, 119 (D.D.C. 2012) (quoting *Hoffman v. Blaski,* 363 U.S. 335, 366 (1960)). And "[a] transfer in derogation of proper venue in the District of Columbia must be justified by particular circumstances that render the forum inappropriate." *In re DRC, Inc.,* 358 Fed. Appx. 193, 194 (D.C. Cir. 2009).

This Court has noted that when a suit is brought in a proper venue, it should not be transferred "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *The Wilderness Soc. v. Babbitt*, 104 F.Supp. 2d 10, 12 (D.D.C. 2000) (internal citations omitted). Moreover, a leading civil practice treatise summarizing relevant law also recognizes that "a motion to transfer under Section 1404(a) should not be granted lightly. After all, by definition, these are cases in which the plaintiff's choice of venue is proper under the applicable venue provisions. Further, setting the defendant's burden of persuasion too low will encourage transfer motions, and the concomitant expenditure of litigant and judicial time and resources." Charles Alan Wright & Arthur R. Miller, 15 Fed. Prac.and Proc. § 3848 (4th ed. 2013).

### A.    This Action Could Have Been Brought in the Central District of California

LLUHEC does not assert that venue for its suit would not have been proper in the Central District of California under the federal venue rules. However, among other reasons, the D.C. Circuit's well-developed review of Board actions involving jurisdiction over religious educational institutions calls for it to be heard in this District.

### B.    The Private Considerations Disfavor Transfer of LLUHEC's Suit

The first of the private factors examined by a Court is the plaintiff's choice of forum. The "'plaintiff's choice of forum is a . . . paramount consideration that is entitled to great deference'"

9

except in situations where "the forum has no meaningful relations to the plaintiff[']s claims or to the parties.'" *Renchard v. Prince William Marine Sales, Inc.*, 28 F.Supp. 3d 1, 7 (D.D.C. 2014) (internal citations omitted). "The degree of deference accorded to . . plaintiffs' choice of forum therefore depends upon the nexus between plaintiffs' chosen forum—the District of Columbia— and the dispute." *The Wilderness Soc.,* 104 F.Supp. 2d at 13.

Here, the first consideration favors a denial of the NLRB's request to transfer venue because a critical part of the Board's actions underlying LLUHEC's suit occurred within the District of Columbia, and the Seventh-day Adventist body that sponsors and authorizes LLUHEC to perform various Church-centered missions is incorporated in Washington, D.C. Exhibit G, Declaration of Karnik Doukmetzian at ¶ 5-6.

The parties are before this Court *only* after and because the NLRB denied LLUHEC's request for review of the Regional Director's denial of its motion to bifurcate and decide the jurisdictional question. That action – an essential reason why LLUHEC filed its complaint in this Court - was undertaken by the Board in the District. Moreover, the Board's effort to flout the *Great Falls* decision and ignore its own *Bethany College* precedent is being driven by the Board's Office of the General Counsel located in Washington, D.C. See Exhibit A; Exhibit C.[9]

Lastly, the Seventh-day Adventist Church has a substantial presence in the District of Columbia. The General Conference Corporation – the governing body of the Seventh-day Adventist Church – has been incorporated in the District of Columbia for over 100 years. See Exhibit F, Articles of Incorporation; Exhibit G, at ¶ 4. LLUHEC is a General Conference

---

[9] In nearly 700 of its decisions, the NLRB makes reference to "national labor policy." Clearly the NLRB understands itself as implementing national policy from its headquarters in Washington, DC. This role has been recognized by the Supreme Court. See e.g., *NLRB v. Curtin Matheson Scientific, Inc*., 494 U.S. 775, 786 (1990) (noting "that the NLRB has the primary responsibility for developing and applying national labor policy").

institution; and as such, is sponsored, guided and authorized to perform its ecclesiastic, spiritual and educational missions by the General Conference. Exhibit G at ¶ 5-6. Moreover, there are eight Seventh-day Adventist Churches in the District. *See The Wilderness Soc.*, 104 F.Supp. 2d at 14 (finding a meaningful connection to this District in part because plaintiffs had offices or headquarters in Washington, D.C.).

This is not a case where a plaintiff named an uninvolved agency headquarters or relied upon some vague national policy of that agency to connect its suit to this Court. Rather, LLUHEC is responding to actions taken, and policy set at the Board's headquarters, including the explicit national policy in effect at the time of the relevant events that calls for "centralized consideration" of cases involving the Board's jurisdiction over religious educational institutions. *See, e.g.*, *Southern Poverty Law Center,* 2019 WL 2077120 at *3 (denying transfer to district where detention centers located in part because plaintiff's claims "focuse[d] predominantly on . . . policy and enforcement decisions at the national and regional level); *The Wilderness Soc.,*, 104 F.Supp. 2d at 13-14 (finding a meaningful connection to this District in part because of the agency's leadership's involvement in the case); *Sandpiper Residents Assoc.,* 2021 WL 2582004 at *4 (finding meaningful connection to the District of Columbia District where complaint challenged actions taken by HUD headquarters in Washington, DC); *Garcia,* 393 F. Supp. 3d at 109 (finding private factors weigh against transfer because action challenged national policy developed in Department of Labor Headquarters in Washington DC); *Mashpee Wampanoag Tribe v. Zinke*, 2019 WL 2569919 at *7 (D.D.C. 2019) (meaningful connection to the District of Columbia District due to actions taken by Assistant Secretary of Indian Affairs at the Department of the Interior located in Washington, DC); *Oceana, Inc. v. Pritzker*, 58 F.Supp. 3d. 2, 5-6 (D.D.C. 2013) (District's interest in case shown in part by "federal regulations promulgated in

the capital"); *Greater Yellowstone v. Bosworth*, 180 F.Supp.2d 124, 128-129 (D.D.C. 2001) (nexus to the District of Columbia due in part to inter-agency discussions of "federal government officials in the District of Columbia").

Accordingly, the first private consideration referenced in *Trout Unlimited* and similar cases disfavors transfer of this matter.

The second private consideration is the defendant's choice of forum. A defendant's choice of forum is "not ordinarily entitled to deference." *Aishat v. Dept. of Homeland Sec.*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018). The Board accuses LLUHEC of forum shopping by choosing to bring its suit in this Court because of unfavorable Ninth Circuit precedent.[10] But it is the NLRB that is seeking to run away from its own governing authority and the clear admonitions of the D.C. Circuit.

It is the Board that refused to bifurcate the jurisdictional question, apply its *Bethany College* precedent, and dismiss the underlying case. It is the Board that is refusing to apply the rulings of the D.C. and First Circuits in *Great Falls*, *Carroll College, Duquesne University,* and *Bayamon*. And, it is the Board, through its General Counsel, that is seeking to avoid its own *Bethany College* decision, and to go back to a jurisdictional test that has been rejected by the

---

[10] *St. Elizabeth Community Hosp. v. NLRB,* is irrelevant, rather than unfavorable to LLUHEC, because it involved a hospital, not a religious educational institution such as LLUHEC, and the Ninth Circuit refused to apply *Catholic Bishop* on that ground. 708 F.2d 1436 (9th Cir. 1983). In *NLRB v. Hanna Boys Center*, the Ninth Circuit refused to apply *Catholic Bishop* because the unit consisted entirely of "secular employees with no teaching function" but noted that "the rationale of *Catholic Bishop* would also support the exclusion from the Board's jurisdiction of other employment relationships if they involved the same constitutional problems inherent in the relationship between teachers and church-operated schools." 940 F.2d 1295, 1302-1303 (9th Cir. 1991). As discussed in LLUHEC's Statement of Points and Authorities in support of its Motion for a Preliminary Injunction, those very same "constitutional problems" are inherent in the proposed unit of residents and fellows here. See Document 6-1 at pp. 11-14.

D.C. and First Circuits. See *Sandpiper Residents Assoc.,* 2021 WL 2582004 at \*5 (noting that defendant federal agency "ha[d] its own strategic reasons for seeking a change in venue"). The Board has been called out by the D.C. Circuit before for such non-acquiescence, but has made a decision to ignore these judicial directives in order to expand its jurisdictional reach. *See Heartland Plymouth Court, supra.*

Regarding the third private factor, there is not a single judicial district in which LLUHEC's claim arose; and, as such, this factor is neutral regarding transfer. The NLRB's exercise of jurisdiction began within the Central District of California, but that exercise of jurisdiction was ratified and extended by Board headquarters in D.C. when it denied LLUHEC's request for review. Further, the Board's "centralized coordination" policy announced by the General Counsel in Memorandum GC 21-04 was issued in the District. Thus, LLUHEC's claims do not arise solely within the Central District of California or the District of Columbia.

The fourth private consideration -- the convenience of the parties -- disfavors transfer. The Board's Contempt, Compliance and Special Litigation Branch is representing the Board in this matter and is located at Board headquarters in Washington, D.C. Primary counsel for LLUHEC is also located in Washington, D.C. and this District was the venue choice chosen by LLUHEC. As counsel for both parties are located in the District, transfer to a forum several thousand miles away is not more convenient.

The next private consideration -- the convenience of witnesses to the extent that they may be unavailable to testify in one of the proposed forums -- is neutral because neither party intends to call witnesses to testify in this matter.  LLUHEC's injunction motion is capable of being decided on the papers. And, even if witnesses were needed, then, as has been the case during the ongoing hearing in NLRB Region 31, the testimony could be taken via video. The particular

needs of *this* case, *i.e.*, whether an injunction is appropriate based upon well-developed law in the District, which is identical to the Board's own standard, do not favor the Central District of California.

The last private consideration, the ease of access to sources of proof, also is neutral. LLUHEC's suit will be entirely decided on the parties' filings and exhibits and both proposed forums have equal ease of access to the sources of proof.

Accordingly, the private considerations support this Court retaining jurisdiction because two considerations disfavor transfer, three are neutral and only one favors transfer. And the single consideration that favors transfer -- the defendant's choice of forum – is entitled to the least weight.

**C.     The Public Considerations Also Disfavor Transfer of LLUHEC's Suit**

The public considerations also disfavor transfer of this case because one factor supports this Court retaining jurisdiction, while the remaining two factors are neutral.

The first public consideration, the transferee jurisdiction's familiarity with the governing laws, favors this Court retaining jurisdiction. Federal courts are generally recognized as competent to handle constitutional and federal statutory claims. *Tuttle v. Jewell*, 952 F.Supp.2d 203, 209 (D.D.C. 2013) This Court, however, has recognized that the D.C. Circuit has greater experience with certain types of cases and, in such cases, this experience weighs against transfer. *See Stewart v. Azar*, 308 F.Supp.4 239, 248 (D.D.C. 2018); *Mashpee Wampanoag Tribe*, 2019 WL 2569919 at *8; *Tuttle,* 952 F.Supp. 2d at 248.

Further, the D.C. Circuit has substantially more experience than the Ninth Circuit in determining whether the NLRB may constitutionally exercise jurisdiction over religious educational institutions. As discussed above at pages 2-5 and below at pages 16-18 in regards to the third public consideration, the D.C. Circuit has issued the key decisions involving the

14

Board's jurisdiction over religious educational institutions, and the Board's own current standard regarding jurisdiction over religious educational institutions—*Bethany College*—is based on those decisions. Moreover, it is the D.C. Circuit that developed the *Great Falls* "bright line test" that the Board is obligated to follow.

In contrast, the Ninth Circuit's only decision applying *Catholic Bishop* to a religious school was issued more than 30 years ago. See *NLRB v. Hanna Boys Center*, 940 F.2d 1295 (9th Cir. 1991). This was more than a decade before the D.C. Circuit decided the lead cases of *Great Falls, Carroll College, Duquesne University* or the Board issued its decision in *Bethany College*. And, unlike the instant case, *Hanna Boys Center*, involved workers performing tasks such as cooking and maintenance, and did not involve the educational process. As such, this consideration disfavors transfer.

The second public consideration, the relative congestion of venues, is neutral. The most recent relevant statistics to this action – a civil matter that will not require a trial – show that on December 31, 2022 the median time from filing of a civil action to its dispositions was 4.7 months in the Central District of California and 5.0 months in this Court. *See* Exhibit H, Court Case Statistics; data available at [fcms_na_distprofile1231.2022.pdf (uscourts.gov)](fcms_na_distprofile1231.2022.pdf). Accordingly, both courts' dockets appear to advance civil actions in approximately the same time frame and therefore this consideration neither favors nor disfavors transfer. *See Center for Biological Diversity v. Ross*, 310 F.Supp. 3d 119, 126-127 (D.D.C. 2018). As recognized by the NLRB, this factor is typically given little, if any, weight by a court. *See* Document 18 at p. 17. However, as the instant action seeks an injunction to remedy ongoing harm, any delay through transfer to the Central District of California to virtually start over is injurious to LLUHEC.

93679692v.10

The third public consideration is also neutral because both this Court and the Central District of California have local interests in this matter. As shown above, decisive actions underlying LLUHEC's suit were undertaken at the NLRB's headquarters in the District of Columbia, and the Board's General Counsel devised and effectuated a national policy controlled from the Board's headquarters in the District regarding cases involving the Board's exercise of jurisdiction over religious educational institutions. And the governing body of the Seventh-day Adventist Church – of which LLUHEC is a subordinate entity – has been incorporated in the District for over a century. Exhibit F; Exhibit G.

Moreover, this Court should have a particular interest in resolving this case because the Board's test for whether it may exercise jurisdiction over religious educational institutions, set forth in *Bethany College*, was adopted wholesale from the D.C. Circuit's *Great Falls* decision.[11] The D.C. Circuit established its *Great Falls* test precisely because the Board "applied the wrong test" and inappropriately exercised jurisdiction over religious educational institutions. 278 F.3d at 1341-1343. To prevent the Board from taking the same action in future cases, the *Great Falls* Court developed a "bright line" test that would allow "the Board to determine whether it has jurisdiction without delving into matters of religious doctrine or motive, and without coercing an educational institution into altering its religious mission to meet regulatory demands." *Id.* at 1344-1345.

The D.C. Circuit reaffirmed its direction to the Board in *Carroll College, Inc. v. NLRB*, 558 F.3d 568 (D.C. Cir. 2009) and *Duquesne University of the Holy Spirit v. NLRB*, 947 F.3d

---

[11] The NLRB accuses LLUHEC of choosing to file its complaint in this Court solely to obtain favorable precedent from the D.C. Circuit. Even if that were true, that would not be render this Court an inappropriate forum for the reasons set forth in the text regarding the transfer of venue considerations. Regardless, this assertion is belied by the fact that, in *Bethany College,* the Board adopted the *Great Falls* test as its own, and that this decision was issued within the D.C. Circuit.

824 (D.C. Cir. 2020). In both *Carroll College* and *Duquesne University*, the D.C. Circuit overturned a Board decision that did not apply the *Great Falls* test. 558 F.3d at 574-575; 947 F.3d at 837. In *Duquesne University*, the D.C. Circuit went so far as to rebuke the Board from deviating from the jurisdictional test announced by the court in *Great Falls.* The *Duquesne University* Court stated that "our precedent is clear" and that in *Great Falls* it "adopted a bright-line test, not a 'rationale' that the Board may 'extend' in a way that asserts jurisdiction over schools that the test places outside the Board's power." 947 F.3d at 833.[12] It cannot be in the public interest for the NLRB to escape clear judicial direction – especially as the Board recognized in *Bethany College* that deviation from such direction has significant constitutional risks. 369 NLRB No. 98 slip op. at p. 8.

Indeed, the NLRA explicitly recognizes the D.C. Circuit as a proper venue for the review of Board final orders regardless of where the relevant actions occurred. Section 10(f) of the Act states "any person aggrieved by a final order of the Board . . . may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia." 29 U.S.C. § 160(f). While LLUHEC is not challenging a final order of the Board in this matter, Congress' decision to invest the D.C. Circuit with venue to review such orders – regardless of where the events in question originate – underscores the unique and important role of the District in developing national labor policy.

---

[12] As shown above at p. 6 and in Exhibits B and C, the Board's General Counsel is seeking to return to the very test that the D.C. Circuit in *Duquesne University* already has held would risk infringement of First Amendment religious rights. 947 F.3d at 833.

Were this case to proceed beyond the instant action, and LLUHEC were aggrieved by Board action – as it already has been – it would have the absolute right to challenge any final orders before the D.C. Circuit. Legal consistency – both in this case, and in the development of generally applicable law – call for this case to remain in the District.

### D.    Additional Considerations of Justice Disfavor the Transfer of LLUHEC's Suit and Demonstrate that the *Leedom v. Kyne* Exception Applies

Courts are to exercise their discretion under Section 1404(a) on an "'individualized, case-by-case' analysis of whether transfer is appropriate." *Southern Poverty Law Center,*, 2019 WL 2077120 at *2 (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). It is therefore of utmost importance that the Court consider the unnecessary harm that LLUHEC would suffer from the delay that a transfer of this suit to the Central District of California would entail.

It cannot be disputed a transfer of this action would cause the resolution of LLUHEC's suit to be delayed by a significant amount of time. During this delay, LLUHEC would be forced continue suffering the trampling of its First Amendment religious freedoms, a recognized irreparable harm.[13] See *Elrod v. Burns*, 427 U.S. 347, 373 (1976)(stating that "[t]he loss of First Amendment freedoms, *even for a minimal period of time*, unquestionably constitutes irreparable injury.")(emphasis added). See also *Stand Up for California! v. U.S. Dept. of the Interior*, 919 F. Supp. 2d 51, 65 (D.D.C. 2013)(denying motion to transfer primarily based on the unfairness and injury that delay in issuing preliminary injunction would cause to the plaintiff).

---

[13] The Board alleges that LLUHEC has failed to plead "any facts supporting" its constitutional claims. See Document 18 at p. 30.  LLUHEC, however, has clearly plead that the Board's exercise of jurisdiction over it violates *Catholic Bishop* and the First Amendment and is causing it irreparable harm. See Document 1 at ¶ 22-34; Document 6 at ¶ 4-6, 10. Moreover, LLUHEC has provided legal and factual support for these claims in its Statement and Points of Authority filed along with its Motion for a Preliminary Injunction. See Document 6-1 through 6-17.

Further, it hardly can foster the interests of justice for the NLRB to blatantly sidestep *Catholic Bishop*, *Great Falls*, and its own current standard which emanates from the D.C. Circuit's pronouncements.[14]

The Board claims that LLUHEC's constitutional harm is somehow lessened because the residents and fellows are both students and teachers.[15] It is unclear why this is so because teachers and students share reciprocal and nearly indistinguishable interests in education.[16] But because LLUHEC and the Union have now stipulated that all LLUHEC residency and fellowship programs require residents and fellows to engage in the teaching of medical students, other residents and other medical professionals, the Court need not rely upon the dual student/teacher nature of the residents and fellows to apply the *Great Falls* test. [17] Exhibit I at ¶ 4; Exhibit J, Resident Job Description at p. 2; and Exhibit K, Resident Training Agreement at ¶ 11(c).

---

[14] The Board cites to *Cap Santa Vue, Inc., v. NLRB,* 424 F.2d 890 (D.C. Cir. 1970) as an example of the D.C. Circuit rejecting a Seventh-day Adventist institution's First Amendment religious objections. This decision is easily distinguishable as it arose prior to the Supreme Court's *Catholic Bishop* decision, and involved a convalescent home not a religious educational institution.

[15] The NLRB also implies that LLUHEC might be a hospital. The Board offered no evidence to support this specious assertion. Indeed, the union in the representation proceeding has stipulated that LLUHEC has no medical facilities, no medical equipment and does not receive compensation for the services provided by residents and fellows. Exhibit I, at ¶ 13, 16.

[16] As previously presented in LLUHEC's Statement of Points and Authorities, the First Amendment concerns raised in *Catholic Bishop* regarding the Board's exercise over teachers at religious educational institutions apply equally to students at those institutions. First, the religious educational mission performed by teachers is for the benefit of students and is the primary reason for a religious school's existence. Second, the religious element of the education is inextricable whether you are the provider or receiver of that instruction. And third, because all LLUHEC programs are encouraged to incorporate the mission and values of the Church, the Board could not avoid excessive entanglement in the religious mission of LLUHEC.

[17] Residents and fellows at LLUHEC teach pursuant to LLUHEC policy, but also because it is a requirement established by the Accreditation Council for Graduate Medical Education. Exhibit I, ¶ 4.

In *Duquesne University*, the D.C. Circuit stated "once we determine that [the persons seeking to unionize] are faculty members *or teachers of any sort*, the *Great Falls* test applies." 947 F.3d 824, 832-833 (emphasis added). Further, *Duquesne University* rejected the argument that adjuncts were not similar to faculty for the simple fact that "[a]djuncts teach." *Id.* at 836. Here, the Union has stipulated that the residents and fellows teach others. Exhibit I at ¶ 4; Exhibit J, at p. 2; and Exhibit K, at ¶ 11(c). As such, the *Great Falls* test applies, and, as shown in its Statement of Points and Authorities submitted in support of its Motion for a Preliminary Injunction, LLUHEC satisfies this test. Document 6-1 at pp. 10-11.

The Board completely fails to address whether LLUHEC satisfies the *Great Falls* test. The Court should find that LLUHEC has affirmatively met its *Great Falls* burden and that the Board has conceded this issue.

Because the *Great Falls* test is satisfied and conceded, all inquiries beyond the three elements of the *Great Falls* test allowed by the Board at the representation hearing forced LLUHEC to suffer irreparable harm. And any further processing of 31-RC-312064 or 31-CA-312278, except to immediately dismiss them, will likewise cause LLUHEC additional irreparable harm within the meaning of *Great Falls*.

The Board wholly misunderstands the source and nature of the irreparable harm that the improper exercise of its jurisdiction causes. It argues that because the representation hearing will end in near future, the harm will cease. This simply is not true for two reasons.

First, the record is still open and additional days of testimony have been set. Second, even after the close of the hearing, the review and evaluation by Board agents of any evidence in the

record beyond that necessary to apply the *Bethany College/Great Falls* test is equally violative of LLUHEC's First Amendment rights.[18]

The NLRB also states that LLUHEC relies upon a "remark" from *Catholic Bishop* for its argument that the mere processing of a case impinges upon First Amendment rights. But the primary reason the D.C. Circuit developed the *Great Falls* test was to prevent the Board from processing a case until the it was certain it could do so without violating *Catholic Bishop* or the First Amendment. And *Great Falls*, *Carrol College, Duquesne University* and *Bethany College* all recognize that the very processing of a case violates the First Amendment when the Board improperly exercises jurisdiction over a religious educational institution.

The Board believes that this case should proceed through its administrative processes like any other case. This case, however, is not a typical representational case because the NLRB does not have jurisdiction over LLUHEC and its processing of the case violates LLUHEC's First Amendment rights. The Board, as it has demonstrated on numerous occasions (*supra* at pp. 3-7), seemingly has no issue with a religious educational institution suffering irreparable harm while the institution goes through the NLRB's entire refusal-to-bargain process and finally receives a favorable decision from the D.C. Circuit, a process which took three years for Duquesne

---

[18] In addition to the representation proceeding, the requested injunction also would cover the unfair labor practice in Case No. 31-CA-312278. The NLRB has not yet begun to investigate this case and LLUHEC remains at risk of inappropriately being subjected to the Board's ongoing jurisdiction there as well.

University.[19] Indeed, as detailed in its Motion to Transfer, the Board thinks this is the *proper* way for it to administer the NLRA.[20]

This should not be the case and is exactly why the *Leedom v. Kyne* exception exists. The Board acts *ultra vires* when it exercises jurisdiction over an entity in violation of *Catholic Bishop* and the First Amendment. Moreover, an entity has no meaningful and adequate method of vindicating its rights when it must suffer irreparable harm for years before having its day in court. That this exception is a "narrow" one in no way means it should not be applied in appropriate circumstances like those present in this matter.

Lastly, that LLUHEC suffer this irreparable harm is completely unnecessary because this Court is a proper venue and, with the filing this Reply, the matter is now fully in front of this Court. As such, this Court can render a decision on LLUHEC's request for an injunction on the very same papers that it will decide the Board's transfer request. And moreover, because the Court's analysis of whether it has jurisdiction under *Leedom v. Kyne*, 358 U.S. 184 (1958) requires it to determine if the Board acted in excess of its delegated powers, a decision on the injunction is essentially a merits determination. Accordingly, beyond the irreparable harm that a

---

[19] Moreover, contrary to the NLRB's specious claim (Document 18, p. 33) that the Board's remedies related to representation matters are limited to cease-and-desist orders, apart from the fact that being forced to cease religious practices and being inappropriately haled before the Board themselves are harms, in fact the NLRB has a variety of tools to inflict economic liability on employers. *See, e.g.,* Bloomberg Law, Daily Labor Report (April 3, 2023) ("Stronger NLRB Refusal-to-Bargain Remedies Wait For Perfect Case").

[20] The Board's disregard for the First Amendment rights of religious educational institutions is perfectly demonstrated by the General Counsel's efforts to return to a test that the D.C. Circuit has already determined to impinge on First Amendment rights. See *Duquesne University*, 947 F.3d at 833; Exhibit B, Exhibit C.  Also, bizarrely, the Board claims (Document 18, pp. 26-27) that *Leedom v. Kyne*'s check on the NLRB's powers somehow only applies to unions, not employers.  Not only did the Supreme Court not so cabin *Leedom*, constitutional rights are not somehow the exclusive purview of labor organizations.

93679692v.10

transfer would cause to LLUHEC, judicial economy and limiting the expense to the parties also strongly favor a denial of the Board's request to transfer.

**IV.     Conclusion**

For the reasons set forth above and in LLUHEC's Statement and Points of Authority in support of its Motion for a Preliminary Injunction, this Court should deny the Board's Motion to Transfer and grant LLUHEC's Motion for a Preliminary Judgment.

Respectfully submitted,

SEYFARTH SHAW LLP
*/s/ Michael D. Berkheimer*

Michael D. Berkheimer (admitted *pro hac vice*)
Samantha L. Brooks (D.C. Bar. No. 1033641)
Seyfarth Shaw LLP
975 F Street
Washington, DC 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com
mberkheimer@seyfarth.com
jtoner@seyfarth.com

*Attorneys for Loma Linda University Health Education Consortium*

Dated: April 3, 2023

93679692v.10

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of the foregoing Plaintiff Loma Linda – Inland Empire

Consortium for Healthcare Education d/b/a Loma Linda University Health Education

Consortium's Opposition to the National Labor Relations Board's Motion to Transfer Venue and

Reply to Opposition to Motion for Preliminary Injunction was filed by CM/ECF, on this 3rd day

of April 2023.

/s/ Michael D. Berkheimer
Michael D. Berkheimer

93679692v.10