EXHIBIT E

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 31

| | | |
|---|---|---|
| Loma Linda University Health Education Consortium | ) ) ) | |
| Respondent, | ) ) | Case No. 31-RC-312064 |
| and | ) | |
| Union of American Physicians & Dentists | ) ) ) | |
| Petitioner. | ) ) ) ) | |

**LOMA LINDA INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION dba LOMA LINDA UNIVERSITY HEALTH EDUCATION CONSORTIUM'S MOTION TO BIFURCATE JURISDICTIONAL DETERMINATION AND TO STAY ALL OTHER PROCEEDINGS**

Loma Linda Inland Empire Consortium for Healthcare Education dba Loma Linda University Health Education Consortium ("LLUHEC"), through counsel, hereby moves the Regional Director to bifurcate the matter of whether the Board has jurisdiction over LLUHEC from the remaining representational issues and stay all other proceedings until the jurisdictional question is finally resolved.[1] If the Regional Director grants LLUHEC's request to bifurcate and stay the remaining proceedings, LLUHEC further requests that the Regional Director decide the threshold jurisdictional issue through briefing and issue a briefing schedule. In support of its requests, LLUHEC makes the below showing to demonstrate why the jurisdictional question is a

---

[1] LLUHEC is not asking the Regional Director for a novel procedural action. Regional Directors have previously bifurcated issues, including a jurisdictional question, and issued stays. *See Ukiah Adventist Hospital*, 332 NLRB 602 fns. 1 & 2 (2000); *Lockheed Martin Co.*, 217 NLRB 573 (1975).

1

EXHIBIT E

critical threshold issue that should be resolved before the Region conducts a representational hearing.

## I.      BACKGROUND AND PROCEDURAL POSTURE

On February 13, 2023,[2] the Union of American Physicians & Dentists ("the Union") filed a petition seeking to represent "[a]ll residents and fellows employed" at LLUHEC, a consortium of religious educational institutions. Currently, the representation hearing is scheduled to begin on March 6.[3]

## II.     LLUHEC IS A PART OF THE SEVENTH-DAY ADVENTIST CHURCH AND INTEGRAL TO ITS MISSION

LLUHEC, which itself is a part of the Seventh-day Adventist Church, is one of a number of Seventh-day Adventist health and educational entities that comprise Loma Linda University Health ("LLUH"). LLUH, which is also a Church organization, is located in the Inland Empire, and has as its primary purpose to serve the Seventh-day Adventist Church in its mission "to make man whole" physically, intellectually, emotionally, and spiritually. The global purpose of LLUH and its constituent entities, including LLUHEC, is to continue Jesus Christ's healing and teaching ministries. This is accomplished through education of health care professionals, scholars, and scientists, delivery of health care, and research.

LLUHEC operates approximately 70 residency programs for the purpose of educating approximately 800 fellows and residents regarding how to minister to patients in a manner that is consistent with its Christ-based mission "to make man whole." Thus, unlike other medical educators, LLUHEC teaches future physicians how to care for the whole person, including

---

[2] All dates hereafter are in 2023 unless otherwise noted.

[3] On February 27, 2023, LLUHEC filed a motion with the Region asking it to continue the hearing until at least March 14, 2023.

2

EXHIBIT E

tending to the spiritual needs of their patients. Through meetings, conferences, prayer sessions, and the distribution of documents, spirituality is infused in the entire educational process.

### III.     THE BOARD LACKS JURISDICTION UNDER ITS *BETHANY COLLEGE* DECISION

Bowing to rebukes from the District of Columbia, First, and Second Circuit Courts of Appeal, the Board recognized in *Bethany College* that it "has an important mission to protect employees' rights set forth in the National Labor Relations Act, but those rights are subordinate to those enshrined in the Constitution where there is a potential conflict between the two." 369 NLRB No. 98, slip op. at 7 (2020). The Board further recognized that it has no expertise in interpreting the Religious Clauses of the First Amendment and should therefore refrain from engaging in analysis of what "does and does not constitute a religious function" at *bone fide* religious educational institutions. *Id.* at 8.

Operating from this foundation, the Board rejected its prior precedent[4] used to determine jurisdiction over religious educational institutions because that precedent "'not only fail[ed] to avoid the First Amendment questions, it plow[ed] right into them at full tilt' by again calling on the Board 'to judge the religiosity of the functions that the faculty perform.'" *Id.* at 6 (citation omitted).

The Board, consistent with the Supreme Court's decision in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979) and the District of Columbia Circuit's  decision in *University of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002), among others,[5] then held that when

---

[4] *Pacific Lutheran University*, 361 NLRB 1404 (2014).

[5] *See e.g., Duquesne University of the Holy Spirit v. NLRB*, 947 F.3d 824 (D.C. Cir. 2020); *Carrol College v. NLRB,* 558 F.3d 568 (D.C. Cir. 2009); *Universidad Central de Bayamon v. NLRB*, 793 F.2d 383 (1st Cir. 1986) (en banc); *NLRB v. Bishop Ford Central Catholic High School*, 623 F.2d 818 (2d. Cir. 1980).

EXHIBIT E

determining whether jurisdiction should be asserted over the faculty of a religious educational institution, it will look only to whether the institution: (1) holds itself out to the public as a religious institution, (2) is nonprofit, and (3) is religiously affiliated. *Id.* at 1, 3-5.

Importantly, when considering limitations placed on the Board's jurisdiction by the Constitution,  the Board's construction and application of the religious institution exception to its own jurisdiction receives no deference from federal courts. *See Univ. Great Falls*, 278 F.3d at 1340; *Bethany College*, 369 NLRB No. 98, slip op. at 8. Moreover, the burden to establish Board jurisdiction clearly rests on the General Counsel. *Bethany College*, at 6, n.8 (citing *Construction and General Laborers Local 1177*, 269 NLRB 746, 746 (1984); *Carroll College v. NLRB*, 558 F.3d 568, 547 (D.C. Cir. 2009)).

### A. The Three-Prong Test Created in *Great Falls,* and Adopted in *Bethany College,* Also **Should  Be Applied to the Residents and Fellows Sought By the Union**

The Board has not addressed whether the three-part test adopted in *Bethany College* applies to students who attend a religious educational institution, but the reasoning underlying *Bethany College*, and the Supreme Court and Circuit Court decisions upon which it rests, fully support such a determination. As first principles, it is improper for the Board to "engage in a balancing of competing statutory and constitutional interest," and the Act must be "interpreted to avoid the substantial risk of infringement of the rights contained in the Religious Clauses." *Bethany College*, 369 NLRB No. 98, slip op. at 7. Moreover, "[i]t is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, *but also the very process of inquiry leading to findings and conclusions*." *Catholic Bishop*, 440 U.S. at 502 (emphasis added).

Regarding this risk to First Amendment rights, the Supreme Court in *Catholic Bishop* saw "no escape from conflicts flowing from the Board's exercise of jurisdiction over teachers in

92510942v.9

EXHIBIT E

church-operated schools and the consequent serious First Amendment questions that would follow." 440 U.S. at 504. To state this differently, when the Board goes "trolling through the beliefs of [a religious educational institution], making determinations about its religious mission," it violates the First Amendment. *University of Great Falls*, 278 F.3d at 1342.

The same unavoidable First Amendment conflicts that arose from the Board seeking to exercise jurisdiction over teachers at religious schools are equally present if the Board sought to exercise jurisdiction over the students at such institutions.[6] This is true for at least three reasons, all related to the immutable nature of a religious educational institution.

First, the purpose of a religious educational institution is inherently and inextricably intertwined with the teaching of its students. Indeed, providing an education informed by its particular religious beliefs is the primary reason for such a school's existence. *See Lemon v. Kurtzman*, 403 U.S. 602, 628 (1971) (Justice Douglas concurrence) (noting that "the admitted and obvious fact that the *raison d'être* of parochial schools is the propagation of a religious faith."). The Supreme Court in *Catholic Bishop* acknowledged this by repeatedly invoking the mission of a religious school and recognizing there was no way in which the Board could exercise jurisdiction over the teachers at such an institution without unconstitutionally invading it religious mission. 440 U.S. at 501-502. *Catholic Bishop* also keenly observed that the instruction provided by a religious school, even in ostensibly secular subjects like reading, is infused with religious doctrine. *Id.* at 501.

---

[6] LLUHEC is aware that the Union contends that, in addition to being students, medical fellows and residents also are employees, a point with which LLUHEC disagrees.  Even if medical fellows and residents had dual status as both students and employees, this does not change the analysis, especially because the purpose of the LLUHEC residency programs is to train new physicians in a manner consistent with the Church's education and healing ministries.   Put another way, the residency programs are inextricably intertwined with the Church's religious mission.

92510942v.9

EXHIBIT E

Second, and closely linked to the first reason, is the reciprocal interest shared among faculty and students in the religious nature of the instruction. The former provides the instruction, and the latter receives the instruction. And regardless of whether you are the teacher or the student, the instruction maintains its religious elements. To make a distinction between teacher and student for First Amendment purposes would be nonsensical and constitutionally forbidden.

Third, if the Board were to exercise jurisdiction over the residents and fellows, it would be necessary for it to inquire into, among other things, whether certain actions were required by the tenets  and teachings of the Seventh-day Adventist faith and what constitutes a term and condition of employment.[7] *See Chicago Bishop*, 440 U.S. at 502-503.  As noted, those considerations are inextricably intertwined.  For instance, the Board would have to determine whether a requirement that a resident or fellow engage in prayer with a patient is a religious matter or a term and condition of employment. Or whether two residents who refuse to engage in such a requirement are engaged in protected, concerted activity. The Board is not empowered to undertake such doctrinal assessments.  Such are the constitutional pitfalls of exercising jurisdiction over students at religious educational facilities.

Because the First Amendment conflicts are the same for teachers and students at religious educational facilities, the test to determine whether the Board may constitutionally exercise jurisdiction over them should also be the same. Accordingly, the Region should apply the three-pronged *Bethany College* test to determine whether it has jurisdiction over the residents and fellows.

---

[7] Indeed, the Union has already filed an unfair labor practice charge against LLUHEC. *See* Case No. 31-CA-312728.

EXHIBIT E

**B.  LLUHEC Easily Satisfies the *Bethany College* Test.**

LLUHEC will present its evidence regarding the three *Bethany College* elements to the Regional Director at the appropriate time, but hereby informs the Regional Director in good faith that it will have no difficulty in establishing that it holds itself out and operates as a religious institution, is nonprofit, and is religiously affiliated.

**C.  The Region Can Decide the Jurisdictional Question Based Solely on the Submission of Briefs.**

LLUHEC is also confident that it can satisfy the evidentiary requirements established in *Great Falls* and adopted in *Bethany* through the submission of a brief and a small number of accompanying exhibits and without a hearing requiring the testimony of witnesses. Thus, if the Regional Director is in agreement that jurisdictional standard established in *Bethany* is applicable to the residents and fellows that Union seeks to organize, LLUHEC requests that the Regional Director issue an order establishing a briefing schedule.

**IV.     *UKIAH* IS NOT DETERMINATIVE**

The Union might argue that the jurisdictional inquiry in this matter is governed by the Board's decision in *Ukiah Adventist Hospital D/B/A Ukiah Valley Medical Center and California Nurses Association,* 332 NLRB 602 ( 2000) ("*Ukiah*"). Any such argument would be mistaken for at least five separate reasons.

First, *Ukiah* predated and did not address  the subsequent development of *Bethany College* and the Constitutional analysis consistent with the Supreme Court's admonitions in *Catholic Bishop.*

Second, *Ukiah* was wrongly decided from the start, a point which is likely to involve briefing at a later date.

92510942v.9

EXHIBIT E

Third, in the more than two decades since the Board's decision in *Ukiah*, the Supreme Court and numerous Circuit Courts have made clear that the proper analysis of claims under the Religious Freedom Restoration Act, 42 U.S.C. § 2000(bb) ("RFRA"), is much more demanding than that applied by the Board in *Ukiah*.

Fourth, *Ukiah* is inapplicable on its face because it involved a hospital and its registered nurses, while this case involves an educational institution and its students (medical residents and fellows).

Fifth, the RFRA jurisprudence establishes that the analysis is fact-specific, which means that blanket rules may not be created. For example, the *Ukiah* Board considered the impact that a refusal to exercise jurisdiction over the hospital would have on the bargaining rights for registered nurses working at the many other Seventh-day Adventist hospitals located throughout the country. 332 NLRB at 605. Here, however, there are no other Seventh-day Adventist residency programs in the country.

## V.   BIFURCATION IS ALSO DICTATED BY PRACTICAL CONSIDERATIONS AND COMMON SENSE

Even if bifurcation were not Constitutionally-compelled,[8] which it is, bifurcation is dictated by practical considerations and common sense.

The Union will certainly claim that all issues should be litigated at once "as it will just take a little more time to do so." That claim would be invalid.

As set forth in LLUHEC's Statement of Position, this case involves over 800 fellows and residents, studying in over 60 different residency programs, assigned to over 40 different locations, many of which are under the control of organizations not affiliated with LLUHEC. It

---

[8] See *Chicago Bishop*, 440 U.S. at 502 (recognizing that Board proceedings alone can constitute violations of the First Amendment).

92510942v.9

EXHIBIT E

would not take much imagination to conclude that, putting aside the jurisdictional issue, the following issues will result in a hearing that easily could last weeks.

- A complete record to show that LLUHEC residents and fellows are students, and not employees under *Boston Medical Center*, and even if they were, that *Boston Medical Center* was wrongly decided and should be disavowed by the Court of Appeals.

- Whether the 40 or so non-LLUHEC locations at which residents and fellows are assigned that are owned and operated by other organizations are joint or single employers with LLUHEC and must be made a part of this case.

- The propriety of a multi-facility unit that consists of up to 40 or so non-LLUHEC locations that are owned and operated by other organizations.

Each of these issues is important and litigation of each will take significant time. And, of course, this would be in addition to "normal" issues such as supervisory status, and unit composition. To take the time to litigate these issues only to eventually learn that the Board lacked jurisdiction in the first instance makes no sense.

WHEREFORE, LLUHEC requests that the Regional Director bifurcate the question of whether the Board has jurisdiction over LLUHEC from the representational proceedings, stay all

92510942v.9

other proceedings until the jurisdictional matter is finally resolved, and issue an order scheduling

briefing on the jurisdictional issue.[9]

Respectfully submitted,

SEYFARTH SHAW

Jeffrey A. Berman
Christian J. Rowley

Attorneys for Loma Linda University Health
Education Consortium

560 Mission Street, 31st Floor
San Francisco California, 94105
crowley@seyfarth.com
415.544.1001

February 27, 2023

---

[9] On February 23 and 25, 2023, counsel for the Petitioner advised counsel for LLUHEC by
telephone that the Union opposed this request.

92510942v.9

EXHIBIT E

## **CERTIFICATE OF SERVICE**

I, Christian J. Rowley, caused a copy of Loma Linda Inland Empire Consortium for

Healthcare Education (dba) Loma Linda University Health Education Consortium's Motion for

Continuance to be served via email upon the following party on this 27th day of February, 2023:

> David A. Rosenfeld
> Weinberg, Roger & Rosenfeld
> 1375 55th Street
> Emeryville, CA 94608
> drosenfeld@unioncounsel.net
> nlrbnotices@unioncounsel.net
> (Counsel for Union of American Physicians & Dentists)

11

EXHIBIT E

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD
## REGION 31

**LLU – HEALTH ED CONSORTIUM**

> **Employer**

> and                                         **Case 31-RC-312064**

**UNION OF AMERICAN PHYSICIANS &
DENTISTS (UAPD)**

> **Petitioner**

## ORDER DENYING MOTION TO BIFURCATE AND STAY PROCEEDINGS, GRANTING MOTION FOR CONTINUANCE, AND RESCHEDULING HEARING

On February 27, 2023, the Employer filed a Motion to Bifurcate Jurisdictional Determination and to Stay All Other Proceedings, and a Motion for Continuance of Hearing in this matter. On February 28, 2023, the Petitioner filed an Opposition to the Employer's Motions.

Having duly considered both parties' positions, the Employer's Motion to Bifurcate Jurisdictional Determination and to Stay all Other Proceedings is hereby DENIED, and the Employer's Motion for Continuance of Hearing is GRANTED. Accordingly,

**IT IS HEREBY ORDERED** that the hearing in the above-entitled matter is rescheduled from March 6, 2023 at 9:00 AM to **9:00 AM** on **Monday, March 13, 2023** by **Zoom videoconference**. The parties are advised that the hearing will continue on consecutive days until concluded, and further requests for postponement are unlikely to be granted.

Dated:  February 28, 2023

_MORI RUBIN_
_____
MORI RUBIN
REGIONAL DIRECTOR
NATIONAL LABOR RELATIONS BOARD
REGION 31
11500 W OLYMPIC BLVD., SUITE 600
LOS ANGELES, CA 90064-1753

EXHIBIT E

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD

| | | |
|---|---|---|
| Loma Linda University Health Education Consortium | ) ) ) | |
| Respondent, | ) ) | Case No. 31-RC-312064 |
| and | ) ) | |
| Union of American Physicians & Dentists | ) ) ) | |
| Petitioner. | ) | |

## LOMA LINDA UNIVERSITY HEALTH EDUCATION CONSORTIUM'S REQUEST FOR EXPEDITED REVIEW OF REGIONAL DIRECTOR'S DENIAL OF MOTION TO BIFURCATE JURISDICTIONAL DETERMINATION AND STAY ALL OTHER PROCEEDINGS

Loma Linda University Health Education Consortium ("LLUHEC"), through counsel, requests that the Board review and reverse the Regional Director's denial of its motion to bifurcate the jurisdictional determination in this matter and stay all other proceedings. LLUHEC makes its request that the Board review the Regional Director's denial to bifurcate the jurisdictional determination pursuant to Section 102.67(c) of the Board's Rules and Regulations (29 CFR § 102.67(c)).[1] LLUHEC makes its request for the extraordinary relief of expedited consideration and to stay all proceedings pursuant to section 102.67(j)(1) of the Board's Rules and Regulations (29 CFR § 102.67(j)(1)).

The Supreme Court in *NLRB v. Catholic Bishop*, 440 U.S. 490 (1979) recognized that even subjecting a  religious educational institution to the Board's processes may

---

[1] The explanatory notes to 2014 modifications to the Board's Rules and Regulations make it clear that Section 102.67(c) is the proper procedure for a party to seek review of any action delegated to a regional director under Section 3(b) unless the Rules and Regulations otherwise prohibit it.

EXHIBIT E

EXHIBIT E

unconstitutionally trample its First Amendment rights. Given the importance of these constitutionally-guaranteed rights, the hearing scheduled to commence on March 13, 2023 should be limited in scope to the small number of jurisdictional facts permitted by *Catholic Bishop* and its progeny.

## I.       BACKGROUND AND PROCEDURAL POSTURE

On February 13, 2023,[2] the Union of American Physicians & Dentists ("the Union") filed a petition seeking to represent "[a]ll residents and fellows employed" at LLUHEC, a consortium of religious educational institutions. The representation hearing  originally was scheduled to begin on March 6. On February 27, LLUHEC filed two motions with the Regional Director of Region 31.

The first motion requested that the issue of whether the Board may properly exercise jurisdiction over LLUHEC be bifurcated and that all other proceedings be stayed until the jurisdictional issue is resolved. The second motion requested that the representation hearing be continued until at least March 13. On February 28, the Union filed its opposition to both of LLUHEC's motions. On that same day, the Regional Director issued an order denying LLUHEC's request to bifurcate and stay and granting LLUHEC's motion to continue the representation hearing until March 13.

## II.      LLUHEC IS A PART OF THE SEVENTH-DAY ADVENTIST CHURCH
##          AND INTEGRAL TO ITS MISSIONS

So that the Board can understand the serious constitutional issues presented by this case, it is necessary to have some understanding of the history and structure of the Seventh-day Adventist Church ("the Church"), how the Church's teachings infuse and govern the operation of

---

[2] All dates hereafter are in 2023 unless otherwise noted.

EXHIBIT E

LLUHEC and the Church's historic teaching that prohibits its institutions, such as LLUHEC, from recognizing or bargaining with unions.[3]

The Seventh-day Adventist Church ("the Church") is a religious organization with doctrinal roots in an American religious revival movement from the mid-nineteenth century. The Church has grown to more than 18 million members worldwide and owns and operates thousands of schools, universities, hospitals and publishing houses. Each of these institutions falls within the Church hierarchy and must support the goals, objectives, and philosophies of the Church.

Ellen G. White, whom the Church believes was a divinely-inspired prophetess, is the source of many of the Church's teachings and her writings are authoritative guidance for the Church in the operation of its healthcare institutions. Mrs. White taught that the "medical missionary work" was to be "the right arm of the body of truth" "under the direction of the divine Head" to prepare for Christ's second coming.[4]

Mrs. White emphasized the centrality of the Healing Mission to the Adventist faith: "[i]f you are a Christian and a competent physician, you are qualified to do tenfold more good as a missionary for God than if you were to go forth merely as a preacher of the word."[5] Indeed, she taught that "[m]edical missionary work is the pioneer work of the gospel" and it is through

---

[3] When the merits of the jurisdictional issue are to be decided, LLUHEC will present a more complete description of the Church and LLUHEC. At that time, LLUHEC will support all the factual claims made then, and here in this Request for Expedited Review, with documentary evidence.

[4] *Instruction for Effective Christian Service*, p. 134 (circa 1905).

[5] *The Gospel of Health*, "Medical Missionary Work," Vol. 1, No. 5, 6, June-July 1897; *see also Testimonies for the Church*, Vol. 5, pp. 439-49.

EXHIBIT E

medical missionary work that Church workers have a unique opportunity to gain access to people and spread to them the Gospel.[6]

LLUHEC is one of the many Church healthcare and educational institutions, but is one of the few that are General Conference institutions, the General Conference being the Church's highest body.  LLUHEC and these other institutions are engaged in the medical missionary work envisioned by Mrs. White. LLUHEC operates approximately 70 residency programs for the purpose of educating approximately 800 fellows and residents regarding how to minister to patients in a manner that is consistent with Church teachings. It was conceived as "an educational entity where students could learn to provide the finest medical care possible, grounded in the wholeness of the Bible's narrative."[7] Its mission "is to continue the teaching and healing ministry of Jesus Christ . .  in a setting of advancing medical science and providing a stimulating clinical and research environment for the education of physicians, nurses and other health professionals."[8]

Thus unlike most other medical educational facilities, the Church's religious beliefs touch on all aspects of the education at LLUHEC and the institution "encourage[s] a personal Christian faith that permeates the lives of those we educate."[9]  The motto and mission of LLUHEC and the related Loma Linda entities is to "To make man whole," by focusing on the whole person--physically, intellectually, emotionally, and spiritually—and not just physically as happens in the typical healthcare setting.  To this end, residents and fellows at LLUHEC are encouraged to

---

[6] Ellen G. White, *The Ministry of Healing*, "Work of the Disciples," p. 144, 145-146.

[7] Spiritual Plan p. 3.

[8] Mission, Visions and Values p. 1

[9] Mission and Values, p. 2.

EXHIBIT E

conduct themselves in accordance with the Church's teachings, educate junior students on

Church doctrine,  and participate in prayer sessions with patients.

III.     **THE BOARD SHOULD SAFEGUARD LLUHEC'S FIRST AMENDMENT RIGHTS FROM UNNECESSARY VIOLATION BY BIFURCATING THE JURISDICTIONAL DETERMINATION AND STAYING ALL OTHER PROCEEDINGS**

    A.  **The Board's Exercise Of Jurisdiction Over Religious Educational Institutions Like LLUHEC Creates Significant Risk That It Will Violate The Institution's First Amendment Rights**

The Board recognized in *Bethany College* that it "has an important mission to protect

employees' rights set forth in the National Labor Relations Act, but those rights are subordinate

to those enshrined in the Constitution where there is a potential conflict between the two." 369

NLRB No. 98, slip op. at 7 (2020). As such, it is improper for the Board to "engage in a

balancing of competing statutory and constitutional interest," and the Act must be "interpreted to

avoid the substantial risk of infringement of the rights contained in the Religious Clauses."

*Bethany College,* 369 NLRB No. 98, slip op. at 7. The Board further recognized that it has no

expertise in interpreting the Religious Clauses of the First Amendment and should therefore

refrain from engaging in analysis of what "does and does not constitute a religious function" at

*bone fide* religious educational institutions. *Id.* at 8.

Moreover, the Supreme Court in *NLRB v. Catholic Bishop* acknowledged that "[i]t is not

only the conclusions that may be reached by the Board which may impinge on rights guaranteed

by the Religion Clauses, *but also the very process of inquiry leading to findings and*

*conclusions." Catholic Bishop,* 440 U.S. at 502 (emphasis added). Regarding this risk to First

Amendment rights, the Supreme Court in *Catholic Bishop* saw "no escape from conflicts flowing

from the Board's exercise of jurisdiction over teachers in church-operated schools and the

consequent serious First Amendment questions that would follow." 440 U.S. at 504. To state this

differently, when the Board goes "trolling through the beliefs of [a religious educational institution], making determinations about its religious mission," it violates the First Amendment. *University of Great Falls,* 278 F.3d at 1342.[10]

The same unavoidable First Amendment conflicts that arose from the Board seeking to exercise jurisdiction over teachers at religious schools are equally present if the Board sought to exercise jurisdiction over the students at such institutions.[11] This is true for at least three reasons, all related to the immutable nature of a religious educational institution.

First, the purpose of a religious educational institution is inherently and inextricably intertwined with the teaching of its students. Indeed, providing an education informed by its particular religious beliefs is the primary reason for such a school's existence. *See Lemon v. Kurtzman,* 403 U.S. 602, 628 (1971) (Justice Douglas concurrence) (noting that "the admitted and obvious fact that the *raison d'être* of parochial schools is the propagation of a religious faith.").

The Supreme Court in *Catholic Bishop* acknowledged this by repeatedly invoking the mission of a religious school and recognizing there was no way in which the Board could jurisdiction over the teachers at such an institution without unconstitutionally invading it

---

[10] For additional criticism of the Board's exercise of jurisdiction over religious education institutions see *Duquesne University of the Holy Spirit v. NLRB,* 947 F.3d 824 (D.C. Cir. 2020); *Carrol College v. NLRB,* 558 F.3d 568 (D.C. Cir. 2009); *Universidad Central de Bayamon v. NLRB,* 793 F.2d 383 (1st Cir. 1986) (en banc); *NLRB v. Bishop Ford Central Catholic High School,* 623 F.2d 818 (2d. Cir. 1980).

[11] LLUHEC is aware that the Union contends that, in addition to being students, medical fellows and residents also are employees, a point with which LLUHEC disagrees. Even if medical fellows and residents had dual status as both students and employees, this does not change the analysis, especially because the purpose of the LLUHEC residency programs is to train new physicians in a manner consistent with the Church's education and healing ministries. Put another way, the residency programs are inextricably intertwined with the Church's religious mission and this would not be changed even if the fellows and residents wore two hats:  student and employee.

92725202v.4

religious mission. 440 U.S. at 501-502. *Catholic Bishop* also keenly observed that the instruction provided by a religious school, even in ostensibly secular subjects like reading, is infused with religious doctrine. *Id.* at 501.[12]

Second, and closely linked to the first reason, is the reciprocal interest shared among faculty and students in the religious nature of the education. The former provides the instruction, and the latter receives the instruction. They are two sides of the same coin.

And regardless of whether you are the teacher or the student, the teaching maintains its religious elements. Indeed, the fundamental element of Amendment protection is not role of the teachers and students, but the religious nature of the education in which they both participate. To make a distinction between teacher and student for First Amendment purposes would be nonsensical, infringe upon the church authorities to provide instruction in accord with their religious beliefs and constitutionally forbidden.

Third, if the Board were to exercise jurisdiction over the residents and fellows, it would be necessary for it to inquire into, among other things, whether certain actions were required by the tenets and teachings of the Seventh-day Adventist faith and what constitutes a term and condition of employment.[13] *See Chicago Bishop,* 440 U.S. at 502-503.

As noted, those considerations are inextricably intertwined. For instance, the Board would have to determine whether a requirement that a resident or fellow engage in prayer with a patient is a religious matter or a term and condition of employment. Or whether two residents

---

[12] LLUHEC will make its evidentiary showing at the proper time, but it clear that this concern is present here. LLUHEC's mission is "is to continue the teaching and healing ministry of Jesus Christ" by providing the residents and fellows the Union seeks to organize an education "grounded in the wholeness of the Bible's narrative."

[13] Indeed, the Union has already filed an unfair labor practice charge against LLUHEC. *See* Case No. 31-CA-312728.

92725202v.4

who refuse to engage in such a requirement are engaged in protected, concerted activity. The Board is not empowered to undertake such doctrinal assessments. Such are the constitutional pitfalls of exercising jurisdiction over students at religious educational facilities.

**B. The Board Should Apply The *Bethany College* Standard When Determining Whether It May Properly Exercise Jurisdiction Here**

The Board has not addressed whether the three-part test adopted in *Bethany College* applies to students who attend a religious educational institution, but the reasoning underlying *Bethany College,* and the Supreme Court and Circuit Court decisions upon which it rests, fully support such a determination here.[14] This is because, as demonstrated in the previous section, the First Amendment conflicts are the same for teachers and students at religious educational facilities, and the test to determine whether the Board may constitutionally exercise jurisdiction over them should also be the same. Accordingly, the Region should apply the three-pronged test adopted in *Bethany College.*[15]

**C. Bifurcating The Jurisdictional Determination Will Not Result In Excessive Delay**

---

[14] In *Bethany College* the Board rejected the test adopted in *Pacific Lutheran University,* 361 NLRB 1404 (2014), used to determine jurisdiction over religious educational institutions because that precedent "'not only fail[ed] to avoid the First Amendment questions, it plow[ed] right into them at full tilt' by again calling on the Board 'to judge the religiosity of the functions that the faculty perform.'" *Id.* at 6 (citation omitted). The Board, consistent with the Supreme Court's decision in *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490 (1979) and the District of Columbia Circuit's decision in *University of Great Falls v. NLRB,* 278 F.3d 1335 (D.C. Cir. 2002), among others, then held that when determining whether jurisdiction should be asserted over the faculty of a religious educational institution, it will look only to whether the institution: (1) holds itself out to the public as a religious institution, (2) is nonprofit, and (3) is religiously affiliated.

[15] Moreover, the burden to establish Board jurisdiction clearly rests on the General Counsel. *Bethany College*, at 6, n.8 (citing *Construction and General Laborers Local 1177*, 269 NLRB 746, 746 (1984); *Carroll College v. NLRB*, 558 F.3d 568, 547 (D.C. Cir. 2009)). Importantly, the courts are clear that the Board should be cautious in considering limitations placed on the Board's jurisdiction by the Constitution, *i.e.*, the Board's construction and application of the religious institution exception to its own jurisdiction receives no deference from federal courts. *See Univ. Great Falls*, 278 F.3d at 1340; *Bethany College*, 369 NLRB No. 98, slip op. at 8.

LLUHEC is also confident that it can satisfy the evidentiary requirements established in *Great Falls* and adopted in *Bethany College* through the submission of a brief and a small number of accompanying exhibits and without a hearing requiring the testimony of witnesses. LLUHEC will be able to prepare and submit these to the Region in a timely manner. And given the importance of the jurisdictional issue, the slight delay that may arise from bifurcating the issue is merited to ensure LLUHEC's First Amendment rights are not violated.

**D. The Bifurcation Of An Issue From a Representational Proceeding And The Staying Of Other Issues Are Not Novel Requests**

LLUHEC is not seeking a novel procedural action. In *Ukiah Adventist Hospital,* the Regional Director bifurcated the jurisdictional issue and stayed the representation hearing pending the Board's ruling on jurisdiction. 332 NLRB 602, fns. 1 & 2 (2000). And in *Lockheed Martin Co.,* the hearing officer, with the approval of the Regional Director, granted the charged party's motion to bifurcate the issue of whether the unit was appropriate and  stayed the representation hearing so that such issue could be addressed preliminarily. 217 NLRB 573 (1975).

**E. The Board Should Act Expeditiously**

The hearing in this matter is scheduled to commence a little more than a week away.  If the requested relief is not granted by then, the First Amendment rights of LLUHEC will be prejudiced and harmed if the threshold issue of whether the Board has jurisdiction in this matter is not first determined.

WHEREFORE, LLUHEC requests that the grant its request that the Board review and reverse the Regional Director's denial to bifurcate the question of whether the Board has

92725202v.4

EXHIBIT E

jurisdiction over LLUHEC from the representational proceedings and stay all other proceedings until the jurisdictional matter is finally resolved.

Respectfully submitted,

SEYFARTH SHAW

Jeffrey Berman
Christian J. Rowley
John J. Toner
Michael Berkheimer

Counsel For Loma Linda University Health Education Consortium

10

EXHIBIT E

EXHIBIT E

## **NOTICE OF FILING/CERTIFICATE OF SERVICE**

The undersigned attorney certifies that the foregoing Request For Expedited Review Of Regional Director's Denial Of Motion To Bifurcate Jurisdictional Determination And Stay All Other Proceedings was filed electronically via the National Labor Relations Board's electronic filing system on this 2nd day of March, 2023 and that a copy was served via e-mail upon:

> David A. Rosenfeld
> Weinberg, Roger & Rosenfeld
> 1375 55th Street
> Emeryville, CA 94608
> drosenfeld@unioncounsel.net
> nlrbnotices@unioncounsel.net
> (Counsel for Union of American Physicians & Dentists)

> *Jeffrey Berman*
> Jeffrey Berman

92725202v.4

11

EXHIBIT E

EXHIBIT E

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD

LLU – HEALTH ED CONSORTIUM
     Employer

     and                                     Case 31-RC-312064

UNION OF AMERICAN PHYSICIANS &
DENTISTS (UAPD)
     Petitioner

ORDER

The Employer's Request for Expedited Review of the Regional Director's Denial of Motion to Bifurcate Jurisdictional Determination and Stay All Other Proceedings is denied as it raises no substantial issues warranting review.  The Employer's request for extraordinary relief is denied as moot.

                               LAUREN McFERRAN,     CHAIRMAN

                               MARVIN E. KAPLAN,     MEMBER

                               DAVID M. PROUTY,     MEMBER

Dated, Washington, D.C., March 13, 2023.

EXHIBIT E